23 A.3d 1032

COMMONWEALTH of Pennsylvania, Appellant

v.

Jules JETTE, Appellee.

Supreme Court of Pennsylvania.

Submitted Jan. 15, 2010.

Decided June 22, 2011.

Hugh J. Burns Jr., Philadelphia District Attorney's Office, Philadelphia, for Commonwealth of Pennsylvania.

Teri B. Himebaugh, Schwenksville, for Jules Jette.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN JJ.

## *OPINION*

Justice ORIE MELVIN.

This is an appeal from an order of the Superior Court, which vacated the order of the PCRA[1] court and granted Appellee's motion for remand to appoint new counsel. We granted review to examine whether the Superior Court erred in requiring court-appointed PCRA counsel to file a petition for remand to address claims asserted in a *pro se* petition for remand that challenged counsel's representation on appeal. For the reasons that follow, we vacate the order of the Superior Court entered on December 11, 2008, and remand to that court for proceedings consistent with this opinion.

On October 1, 2001, following a bench trial, Appellee was found guilty of involuntary deviate sexual intercourse, endangering the welfare of a child, and corruption of minors for repeated sexual assaults against an eight-year-old boy. Appellee was sentenced to a term of imprisonment of ten to twenty years, with consecutive terms of probation of seven and five years. On direct appeal, Appellee, who was represented by new counsel, challenged the sufficiency of the evidence and trial counsel's effectiveness in failing to move to dismiss the charges due to pre-arrest delay. The Superior Court affirmed in a published opinion filed on February 24, 2003, and this Court denied allocatur on September 3, 2003. *Commonwealth v. Jette*, 818 A.2d 533 (Pa.Super.2003), *appeal denied*, 574 Pa. 771, 833 A.2d 141 (2003).[2]

---

1. Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541–9546.

2. The Superior Court addressed the ineffective assistance of counsel claim on its merits since it found that this Court in *Commonwealth v.*

On October 20, 2003 and April 27, 2004, Appellee filed timely *pro se* PCRA petitions. Counsel was appointed, who subsequently filed a no-merit letter pursuant to *Commonwealth v. Finley*, 379 Pa.Super. 390, 550 A.2d 213 (1988) (*en banc* ) (establishing, along with *Commonwealth v. Turner*, 518 Pa. 491, 544 A.2d 927 (1988), the procedure for withdrawal of court-appointed counsel in collateral attacks on criminal convictions). Appellee responded by filing lengthy objections to counsel's no-merit letter on March 24, 2005 and April 18, 2005. Consequently, counsel abandoned his attempt to withdraw and filed an amended petition on Appellee's behalf asserting a claim that trial counsel was ineffective for failing to communicate a plea offer to Appellee. *See* Original Record D–15, Amended Petition, 5/26/05, at 2. After further communication with Appellee, on October 20, 2005, counsel filed a supplemen-

*Grant*, 572 Pa. 48, 813 A.2d 726 (2002), "did not announce a complete prohibition on consideration of ineffectiveness claims on direct review," and the claim was raised in the trial court and addressed in the trial court opinion. *See Jette*, 818 A.2d at 535 n. 3. We note that in reaching this conclusion the Superior Court did not have the benefit of our decision in *Commonwealth v. Bomar*, 573 Pa. 426, 826 A.2d 831 (2003), which was decided three months later, wherein this Court carved out what has since been described as an exception to the *Grant* rule and held that an appellate court may consider ineffective assistance claims on direct appeal only if the claims were raised below, developed in the certified record, and definitively determined by the lower court. *Id.* at 854–55.

Moreover, the scope and continuing viability of the so-called *Bomar* exception is presently before this Court in *Commonwealth v. Holmes*, 606 Pa. 209, 996 A.2d 479 (2010), wherein we granted review of the following issues:

Whether the claims of ineffective assistance of counsel which are the exclusive subject of this *nunc pro tunc* direct appeal: (1) are reviewable on direct appeal under *Commonwealth v. Bomar*, 573 Pa. 426, 826 A.2d 831 (2003); (2) should instead be deferred to collateral review under the general rule in *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002) that defendants should wait until the collateral review phase to raise claims of ineffective assistance of counsel; or (3) should instead be deemed reviewable on direct appeal only if accompanied by a specific waiver of the right to pursue a first PCRA petition as of right. *See Commonwealth v. Wright*, 599 Pa. 270, 961 A.2d 119, 148 n. 22 (2008) ("Prolix collateral claims should not be reviewed on post verdict motions unless the defendant waives his right to PCRA review...."); *see also Commonwealth v. Liston*, 602 Pa. 10, 977 A.2d 1089, 1095, 1101 (Castille, C.J., concurring, joined by Saylor, J., & Eakin, J.).

tal amended petition asserting four additional claims of trial counsel's ineffectiveness.[3] The PCRA court held an evidentiary hearing, during which evidence was taken regarding trial counsel's conduct. On September 28, 2006, the PCRA court dismissed Appellee's PCRA petition finding no merit to any of the ineffectiveness claims raised.

Appellee filed an appeal with the Superior Court, and counsel filed a brief on Appellee's behalf asserting that the PCRA court erred in failing to find that trial counsel was ineffective for failing to object to the admission of the victim's "My Life" testimony. Counsel chose not to pursue the other four issues presented to the PCRA court and addressed in its opinion. Appellee then filed a *pro se* petition for remand raising PCRA counsel's ineffectiveness for not pursuing all of the issues Appellee wished to have reviewed on appeal. The Superior Court denied the *pro se* petition but directed counsel to file a petition for remand responding to Appellee's ineffectiveness claims pursuant to the procedure outlined in *Commonwealth v. Lawrence*, 408 Pa.Super. 9, 596 A.2d 165 (1991) and *Commonwealth v. Battle*, 879 A.2d 266 (Pa.Super.2005) ("*Battle* procedure"). Counsel subsequently complied by filing a motion to remand for the appointment of new counsel. In a published opinion, the Superior Court directed counsel to "prepare a proper and thorough petition for remand" and "to include in the certified record all of the PCRA petitions filed in this case." *Commonwealth v. Jette*, 947 A.2d 202, 206 (Pa.Super.2008). After counsel complied with these directives, the Superior Court followed its *Battle* procedure and reviewed counsel's analysis of Appellee's claims of trial counsel's alleged ineffectiveness to determine "whether [PCRA] counsel properly found these claims to be frivolous." *Commonwealth v. Jette*, No. 2834 EDA 2006, unpublished memorandum, ¶ 5 at 3–4, 965 A.2d 296 (Pa.Super. filed December 11, 2008). Ulti-

3. Specifically, the supplemental amended petition further asserted that trial counsel was ineffective for "advising [Appellee] not to testify," "failing to object to complainant testifying to contents of My Life story," "failing to investigate [eleven specifically outlined] aspects of [Appellee's] case," and "failing to object when the sentencing court did not grant [Appellee] his right to allocution." *See* Original Record D–16, Amended Petition, 10/20/05, at 3–6.

mately, the Superior Court found that Appellee was entitled to appointment of new counsel and remanded the case to the PCRA court. The Superior Court further directed that:

[n]ewly appointed counsel should examine [Appellee's] original PCRA petition, consult with [Appellee] to determine the claims he wishes to raise, and investigate and consider the claims we have determined may have arguable merit ..., namely, the last page of the "My Life" document, the possibility that "My Life" was typed on a computer rather than a typewriter, the items listed in the original PCRA petition that [Appellee] wished counsel to pursue, and [Appellee's] allocution issue. Newly appointed counsel should also re-examine the sole issue current counsel raised on appeal and prepare a new, amended PCRA petition raising those claims counsel considers meritorious after a thorough investigation.

*Id., Mem Op.* ¶ 17 at 11. This Court's grant of the Commonwealth's petition for allowance of appeal followed.[4]

The Commonwealth argues that the Superior Court's *Battle* procedure should be abolished because it requires counsel to "litigate against his client in a contest to be decided by the appellate court, in an effort to establish that the claims preferred by the client are frivolous." Commonwealth's brief at 9. Furthermore, the Commonwealth contends that the procedure impinges upon counsel's exercise of his professional judgment and "demands inferior appellate advocacy" by requiring counsel to "raise all the non-frivolous issues proposed by the defendant or be removed from the case by the Superior Court." *Id.*

The Commonwealth further asserts that the Superior Court's *Battle* procedure contravenes this Court's holding in *Commonwealth v. Ellis*, 534 Pa. 176, 626 A.2d 1137 (1993) ("*Ellis II* "), where we held, as a matter of constitutional law

4. We note that after we granted allocatur, Appellee's PCRA counsel, Michael P. Marryshow, filed a motion to withdraw as counsel, and the Commonwealth filed a motion to confirm existing appointment of counsel. In light of the entry of appearance by Appellee's new counsel, Teri B. Himebaugh, this Court entered an order on January 28, 2010 dismissing both motions as moot.

and under our supervisory authority, that "there is no right to hybrid representation either at trial or on appeal." Commonwealth's brief at 12. The Commonwealth maintains that in precluding hybrid representation, this Court made clear that a represented defendant on appeal has only two options: "(1) waive counsel and proceed pro se; or (2) proceed with appellate counsel and, if warranted, raise appellate counsel's supposed ineffectiveness at a later date. But 'the [one] thing he may not do' is raise his own appellate claims while still represented by counsel." *Id.* at 13 (quoting *Ellis II,* 626 A.2d at 1141). The Commonwealth posits that the Superior Court's subsequent decision in *Battle* misinterpreted the scope of the holding in *Ellis II* as offering support for the proposition that whenever a defendant alleges ineffectiveness of appellate counsel on appeal, said counsel is required to petition the appellate court for remand. The Commonwealth submits that *Ellis II* did not involve claims of appellate counsel's ineffectiveness, as the grant of review was limited to the question of hybrid representation. Significantly, the Commonwealth notes that the Superior Court's misinterpretation is highlighted by this Court's explanation that once appellate counsel has filed a brief, an appellant's right to petition to waive counsel and proceed *pro se* is prohibited. *See Commonwealth v. Rogers,* 537 Pa. 581, 645 A.2d 223 (1994) (applying *Ellis II* and rejecting argument that once a *"pro se* brief was filed ...,* appellate counsel should have petitioned for a remand to determine whether the waiver was a knowing and voluntary one."). Moreover, this Court's preclusion of hybrid representation in *Ellis II* was extended to collateral review in the trial court by our decision in *Commonwealth v. Pursell,* 555 Pa. 233, 724 A.2d 293 (1999), wherein we held that "courts considering PCRA petitions [will not be required] to struggle through the pro se filings of defendants when qualified counsel represent those defendants." *Id.* at 302.

In response, Appellee asserts that the Superior Court's decision should be affirmed because it was "entirely consistent with case precedent." Appellee's Brief at 6. Appellee argues that the Superior Court's *Battle* procedure "expressly pre-

vents [hybrid representation] from occurring while still ensuring the petitioner's constitutional rights" by requiring counsel's analysis of any *pro se* filings and only permitting the court to consider the *pro se* filing for the limited purpose of identifying those claims the petitioner desired to have raised. *Id.* at 8. Further, Appellee contends that the Commonwealth's reliance on *Ellis II* is misplaced, as it is factually distinguishable. Appellee submits that *Ellis II* involved a direct appeal, and, thus, Ellis "still had procedures available to him to raise claims of ineffective assistance of counsel." *Id.* at 9. Unlike Ellis, Appellee asserts that he "must raise all claims of ineffective assistance of counsel at this stage ... or forever waive those claims." *Id.* Appellee also takes issue with the Commonwealth's assertion that the *Battle* procedure requires counsel to raise all non-frivolous issues proposed by the defendant or be removed from the case. Rather, Appellee maintains that the *Battle* procedure simply requires counsel to be able to "articulate a reasonable legal basis for not including the claim(s)." *Id.* at 11.

■ The issue in this case presents a question of law; thus, our standard of review is plenary, and our scope of review is *de novo*. *Commonwealth v. King*, 595 Pa. 685, 939 A.2d 877, 880 (2007).

■ After a careful review of the Superior Court's opinion, the applicable law, and the briefs of the parties, we agree with the Commonwealth that the Superior Court has misinterpreted our holding in *Ellis II*. Consequently, we find that its adoption of the so-called *"Battle* Procedure" as applied to address *pro se* claims of appellate counsel's ineffectiveness, while that counsel is still representing the appellant, is in contravention of this Court's long-standing policy that precludes hybrid representation. *Commonwealth v. Reid*, 537 Pa. 167, 642 A.2d 453, 462 (1994), *cert. denied*, 513 U.S. 904, 115 S.Ct. 268, 130 L.Ed.2d 186 (1994) ("[A]ppellants in criminal cases possess no constitutional right to hybrid representation, and thus, any *pro se* briefs that they may file while

represented by counsel will not be considered.") (citing *Ellis II* ).

In order to fully understand the background that led to the Superior Court's misinterpretation of *Ellis II* and subsequent adoption of the *Battle* procedure,[5] we must examine the hold-

5.  The Superior Court in *Battle* explained its procedure as follows:

    We begin by reviewing our well[-]established procedures for handling documents filed *pro se* by represented appellants. These procedures are guided by our Supreme Court's holding that there is no constitutional right to hybrid representation, neither on appeal, nor at trial. *Ellis*, 534 Pa. at 180, 626 A.2d at 1139. When an appellant who is represented by counsel files a *pro se* petition, brief, or motion, this Court forwards the document to his counsel. 210 Pa.Code § 65.24; *Ellis*, 534 Pa. at 180, 626 A.2d at 1139. If the brief alleges ineffectiveness of appellate counsel, counsel is required to petition this Court for remand. *Ellis*, 534 Pa. at 180, 626 A.2d at 1139; *Lawrence*, 596 A.2d at 168. In the petition for remand, counsel must cite appellant's allegations of ineffectiveness and provide this Court with an evaluation of those claims. *Commonwealth v. Blystone*, 421 Pa.Super. 167, 617 A.2d 778, 782 (Pa.Super.1992); *Lawrence*, 596 A.2d at 168. This Court will then determine whether or not a remand for appointment of new counsel is required, based on our review of counsel's petition and the record. *Blystone*, 617 A.2d at 782; *Lawrence*, 596 A.2d at 168.

    We stress that this Court does not review the *pro se* brief, but rather reviews counsel's analysis of the issues raised *pro se*. *Blystone*, 617 A.2d at 782; *Lawrence*, 596 A.2d at 168. The process has similarities to the procedures required of appointed counsel who seeks to withdraw from representing an appellant, based on a determination that the issues for appeal are totally frivolous. *See Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) (describing the requirements of an *Anders* brief, which must be filed when appointed counsel seeks to withdraw from a direct appeal based on a determination that the issues presented are wholly frivolous); *Commonwealth v. Finley*, 379 Pa.Super. 390, 550 A.2d 213 (Pa.Super.1988) (*en banc* ) (describing the requirements of a *Finley* letter, which must be filed when appointed counsel seeks to withdraw from a collateral appeal filed under the Post–Conviction Relief Act).

    The procedure outlined in *Ellis* and *Lawrence* is based on a need to balance a *pro se* appellant's constitutional rights with the substantial administrative burden and confusion that can arise under circumstances of hybrid representation. *Ellis*, 581 A.2d at 600. To require a remand for new appointed counsel every time that a *pro se* appellant made an allegation of ineffective assistance would create unreasonable administrative burdens and delays. *Lawrence*, 596 A.2d at 168. However, the court abdicates its responsibility if it does not provide some mechanism for judicial review of *pro se* claims of ineffective assistance of counsel. Thus, we require that counsel file a

ings in the Superior Court's *en banc* decision in *Commonwealth v. Ellis*, 398 Pa.Super. 538, 581 A.2d 595 (1990) ("*Ellis I* ") and this Court's review of that decision in *Ellis II*. In *Ellis I*, the appellant filed a *pro se* notice of appeal from his judgment of sentence, an application for leave to proceed *in forma pauperis*, and a motion for the appointment of counsel. Appointed counsel subsequently filed an appellate brief raising seven issues, and the appellant filed a separate *pro se* brief presenting four additional claims. Before deciding the merits of the issues, the *en banc* court addressed the procedural question of "whether and under what circumstances [the Superior Court] will consider *pro se* briefs in criminal cases where appellant is represented by counsel on appeal." *Ellis I*, 581 A.2d at 597. On this question, the Superior Court held:

> [w]e will accept for filing *pro se* appellate briefs, but we will not review a *pro se* brief if a counseled brief has been filed, either before, simultaneously with, or after the *pro se*, due to the judicial confusion and delay that ensues. . . . If a *pro se* brief is filed in a counseled appeal, we direct the prothonotary to send the *pro se* brief on to counsel who is best able to determine in her professional judgment which of the *pro se's* issues should be presented for our review. Counsel may argue such pertinent issues in her brief to the court, or if the appellate brief has been filed, she may file a supplemental brief addressing those same issues. If the *pro se* brief alleges ineffectiveness of appellate counsel or an affirmative desire to be heard *pro se*, we direct counsel to petition this court to remand the case to the trial court so that it may conduct a full hearing in order to determine appellant's knowing and intelligent waiver of his right to appellate counsel, and of his desire to proceed *pro se*, or in the case of ineffectiveness, an appointment of new appellate counsel.

*Id.* at 600–01.

Ellis petitioned for allowance of appeal, and this Court granted review limited to the issue of whether the Superior

> petition for remand "so as to insure [sic] that the ineffectiveness claims are presented [to the court]. . . ." *Id.*
> *Battle,* 879 A.2d at 268–69 (footnote omitted).

Court is required to review *pro se* briefs filed by represented appellants. This Court affirmed the refusal to review the *pro se* briefs noting that the "Superior Court was correct in its determination that there is no constitutional right to hybrid representation either at trial or on appeal." *Ellis II,* 626 A.2d at 1139. After determining that there was no statutory mandate allowing hybrid representation, we addressed Ellis's policy argument that "it is more efficacious, ultimately, to review the pro se briefs than to deny review and be faced later with withdrawal of counsel and ineffectiveness claims." *Id.* at 1140. In rejecting this argument, we agreed with the emphasis that both the Commonwealth and the Superior Court placed on "the importance of expert, focused appellate advocacy." *Id.* Consequently, we opined that the options available to a represented appellant are two-fold. Specifically,

[a] represented appellant may petition to terminate his representation; he may, ... proceed on his own behalf. Conversely, he may elect to allow counsel to take his appeal, but [ ] should counsel not prevail, assert counsel's ineffectiveness at a later time and, thus indirectly, assert the claims he would have made on direct appeal. The only thing he may not do is confuse and overburden the court by his own pro se filings at the same time his counsel is filing briefs on his behalf.

*Id.* at 1141.

Contrary to the Superior Court's holding in *Battle,* which cites *Ellis II* as authority for its remand procedure, *see Battle,* 879 A.2d at 268 ("If the brief alleges ineffectiveness of appellate counsel, counsel is required to petition this Court for remand."), this Court's decision in *Ellis II* did not authorize, let alone mandate, the filing of a petition for remand seeking the appointment of new counsel whenever a represented appellant alleges ineffectiveness of his current counsel. Rather, the Superior Court mistakenly gleaned such a requirement from its holding in *Lawrence, supra,* wherein the Superior Court relied upon *dicta* from its *en banc* holding in *Ellis I* and not this Court's subsequent pronouncements in *Ellis II. Lawrence* was decided on August 8, 1991, while our review of *Ellis*

*I* was pending. The panel in *Lawrence* further determined that whenever the appellate court is presented with a petition to remand for the appointment of new appellate counsel in light of appellant's allegation of counsel's ineffectiveness on appeal, "any grant of such a petition must be premised on the *McBee* standard." [6] *Lawrence,* 596 A.2d at 168.

Prior to the resolution of the appeals in *Ellis I, Lawrence,* and *Battle,* the Superior Court acknowledged that "when confronted with this issue in the past [it] would not consider the separate briefs of counsel and appellant, but remanded the matter to the trial court to conduct a hearing in order for appellant to choose whether he wished to represent himself or remain counseled on appeal." *Ellis I,* 581 A.2d at 598 (citing *Commonwealth v. Kibler,* 294 Pa.Super. 30, 439 A.2d 734, 736 (1982) ("As a matter of policy this Court will not consider separate briefs filed by counsel and pro se briefs filed by the appellant. The appellant must make a choice as to whether he wants to act on his own behalf or through counsel.")). This Court's holding in *Ellis II* was an affirmation of the Superior Court's past policy of requiring the litigant to make a choice between a counseled appeal and self-representation. If self-representation was the choice, then our subsequent decision in *Commonwealth v. Grazier,* 552 Pa. 9, 713 A.2d 81 (1998), made clear that the Superior Court was to remand the matter to the trial court for the necessary determination of whether his waiver of counsel was knowing, intelligent, and voluntary. *Id.* at 82.

Additionally, in *Commonwealth v. Rogers,* 537 Pa. 581, 645 A.2d 223 (1994), we held that a criminal appellant who challenges the effectiveness of his appellate counsel's representation cannot "terminate counsel after the time of counsel's filing of appellate briefs simply because he wishes to file *pro se*

6. In *Commonwealth v. McBee,* 513 Pa. 255, 520 A.2d 10, 13 (1986), this Court held:

When appellate counsel asserts a claim of his or her own ineffective assistance of counsel on direct appeal, the case should be remanded for the appointment of new counsel except (1) where, it is clear from the record that counsel was ineffective or (2) where it is clear from the record that the ineffectiveness claim is meritless.

appellate briefs." *Id.* at 224. We explained our rationale as follows:

> Clearly, under *Ellis [II]*, an appellant has the right to terminate appellate representation prior to the filing of an appeal. However, *Ellis [II]* specifically condemns the practice of filing separate *pro se* briefs which "*confuse and overburden the court.*" Allowing Appellant in the case *sub judice* to terminate counsel and proceed *pro se* on amended and supplemented briefs would, we believe, result in just the confusion and overburdening of the court we proscribed in *Ellis [II]*.
>
> We therefore find that it is appropriate to prohibit such a tactic and to require an appellant to remain with counsel through the appeal, once counsel has filed briefs. We also emphasize that this policy would in no way undermine an appellant's interest in adequate representation. As stated in *Ellis [II]*, an appellant is always free to assert appellate counsel's ineffectiveness at a later time. *Ellis [II]*, [534] Pa. at [183], 626 A.2d at 1140.

*Id.* (emphasis in original). Accordingly, at least with respect to direct appeals, a remand for the appointment of new counsel was never countenanced.

Furthermore, in *Pursell, supra*, much like in the instant case, Pursell filed a *pro se* application for post-conviction relief and sought the appointment of counsel. Appointed counsel then filed an amended PCRA petition, which raised three issues. Pursell sought both to supplement counsel's amended PCRA petition with twenty-seven *pro se* claims and to have new PCRA counsel appointed. The trial court denied both requests and dismissed the amended PCRA petition without a hearing. Pursell, now acting *pro se*, appealed the dismissal to this Court,[7] raising the three issues that PCRA counsel includ-

---

7. *Pursell* was a capital case, therefore, exclusive jurisdiction of appeals from final orders denying post conviction relief in cases in which the death penalty has been imposed is vested in this Court. 42 Pa.C.S. § 722(4); 42 Pa.C.S. § 9546(d); *Commonwealth v. Morris*, 565 Pa. 1, 771 A.2d 721, 743 n. 1 (2001) (then Justice Castille, concurring) (explaining that the 1988 version of Section 9546(d) governs following

ed in the amended PCRA petition and the twenty-seven claims that Pursell had sought to raise *pro se* in the trial court, which consisted of layered claims of ineffectiveness of PCRA counsel. We applied the rationale of *Ellis II* and *Rogers* to PCRA proceedings, noting "[w]e will not require courts considering PCRA petitions to struggle through the pro se filings of defendants when qualified counsel represent those defendants," *Pursell*, 724 A.2d at 302. Accordingly, we concluded that the PCRA court properly denied the *pro se* request to supplement the counsel amended PCRA petition.[8] *Id.*

Our examination of this Court's jurisprudence reveals the consistent expression precluding hybrid representation for all of the reasons initially expressed by the Superior Court in its *en banc* decision in *Ellis I*, namely,

that permitting the pro se brief may involve a conflict between lawyer and client, and this conflict could undermine appellant's chance of success; that counsel is obligated to submit to the appellate court only those issues which he believes to possess merit; that under no other circumstances are counsel and client permitted to present opposing arguments to Superior Court, as may well happen if both are permitted to submit briefs; and finally, that reviewing pro se briefs of counseled appellants would lead to procedural confusion and delay in the appellate process because of the need for the court and the Commonwealth to review and evaluate additional pro se briefs.

*Ellis II*, 626 A.2d at 1138–39.

Indeed, this case amply reveals the tension the procedure interposes between client and counsel and the inappropriate

this Court's order dated August 11, 1997 which, *inter alia*, specifically suspended the 1995 and 1997 amendments to Section 9546(d)).

8. We recognize that in *Pursell*, this Court did address appellant's *pro se* issues on appeal, however, we did so while appellant was acting *pro se* and not while still represented by the attorney whose performance he was challenging. Further, we did not remand for the appointment of new counsel and an opportunity to raise those claims and any others anew in yet another amended petition for the PCRA court's consideration. Such an approach was consonant with our affirmation in *Ellis II* of the Superior Court's past policy of requiring the litigant to make a choice between a counseled appeal and self-representation.

role the appellate court then plays in refereeing the court-created "battle." The Commonwealth, which finds itself in the unusual position of advocating in defense of the honor, independence, and professionalism of the criminal defense bar, has succinctly and aptly described the difficulties, as created by the Superior Court panel in this case:

The Superior Court's *Battle* procedure pits defendants against their lawyers to contest the issues to be raised on appeal. The Superior Court, as referee, decides which issues are not frivolous and fires the lawyer who refuses to raise them.

This Court ruled in 1993 [in *Ellis II*] that represented defendants may not raise pro se claims on appeal, for reasons that this case makes abundantly clear. The cost in judicial resources alone is considerable. Here the counsel-versus-client mini-case lasted for 20 months, after which the Superior Court disposed of the appeal without deciding it. This process risks creating animosity between counsel and client. While it was meant to ensure good lawyering, it actually punishes effective appellate advocacy and rewards its opposite. Under the *Battle* procedure, a lawyer who exercises professional judgment to select the few best issues, rather than every non-frivolous issue, will be fired. The chilling effect of this procedure creates a further potential for a conflict of interest, since a lawyer who practices the best appellate advocacy risks removal.

[T]he Superior Court's *Battle* procedure is contrary to this Court's precedent and intrudes on this Court's exclusive authority to supervise the practice of law and impose procedural rules. It is also, quite simply, bad policy. This Court should abolish it.

Commonwealth's Brief at 8 (Summary of Argument).

In addition to this Court's jurisprudence, our rules of appellate procedure provide that whenever a defendant is represented by an attorney and the defendant files a *pro se* motion with the court, the filing will not be docketed and will be forwarded to counsel for his consideration. Pa.R.A.P. 3304; 210 Pa.Code Ch. 65 § 65.24. This rule allows counsel to

exercise his professional judgment in deciding whether the *pro se* claims are worthy of presentment to the court.[9]  Hence, the policies that advise against allowing hybrid representation are well established.

■  Furthermore, an indigent criminal defendant does not enjoy the unbridled right to be represented by counsel of his own choosing.  *See Commonwealth v. Cook*, 597 Pa. 572, 952 A.2d 594, 617 (2008) ("While an indigent is entitled to free counsel, he is not entitled to free counsel of his own choosing.") (quoting *Commonwealth v. Chumley*, 482 Pa. 626, 394 A.2d 497, 507 n. 3 (1978)).[10]  Consequently, unless irreconcilable differences could be shown, if an appellant was unhappy with appellate counsel's representation, it was assumed under prior law that he could exercise his right to self-representation by requesting a remand for a *Grazier* hearing provided the request was made before the filing of a counseled brief.  *See Ellis II* and *Rogers, supra.*[11]  Therefore, this Court's prece-

9.  In fact, in this case, on more than one occasion, the rule operated as intended when Appellee's PCRA counsel reviewed Appellee's *pro se* filings and included in his amended PCRA petition some of the claims raised therein for the PCRA court's consideration.

10.  *See also* Pa.R.Crim.P. 122(C) ("A motion for change of counsel by a defendant for whom counsel has been appointed shall not be granted except for substantial reasons.");  *Commonwealth v. Wright*, 599 Pa. 270, 961 A.2d 119, 134 (2008) ("To satisfy this standard, a defendant must demonstrate he has an irreconcilable difference with counsel that precludes counsel from representing him.").

11.  The assumption that the right of self-representation extended to appeals was premised upon *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), wherein the United States Supreme Court held that a defendant "has a constitutional right to proceed **without** counsel when he voluntarily and intelligently elects to do so."  *Id.* at 807, 95 S.Ct. 2525 (emphasis in original).  Subsequently, in *Martinez v. Court of Appeal of California*, 528 U.S. 152, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000), the High Court clarified that the *Faretta* holding was "confined to the right to defend oneself at trial."  *Id.* at 154, 120 S.Ct. 684.  After examining the distinguishing circumstances on appeal, the Court determined that there was no federal constitutional right to self-representation on appeal.

Furthermore, this Court recently noted in *Commonwealth v. Staton*, 12 A.3d 277, 280 (Pa.2010), that the "question of entitlement to self-representation on appeal" presents a novel question in Pennsylvania. In *Staton*, we were asked to address that question in conjunction with a motion to withdraw filed by the appellant's counsel.  We found that

dent has determined that, absent a motion for change of counsel, where the appellant can demonstrate he has an irreconcilable difference with counsel that precludes counsel from representing him, or perhaps a timely petition for self-representation, or the retention of private counsel,[12] the appellant must remain with appointed counsel through the conclusion of the appeal. Accordingly, we find the Superior Court's creation of another option, i.e., to seek appointment of new counsel by requiring current counsel to file a petition for remand pursuant to the Battle guidelines, is not only untenable but contrary to precedent and, therefore, disapproved.

The Battle procedure clearly has the effect of requiring counsel to file a merits brief of an appellant's pro se claims, even though counsel has rejected inclusion of those claims in the exercise of his professional judgment, which are then reviewed by the court for frivolity. Such a procedure conflicts with the traditional appellate review paradigm by requiring counsel to advance arguments on his client's behalf while simultaneously refuting the validity of issues that the client believes are also worthy of review but counsel chose not to raise. Furthermore, the remedy of appointing new counsel pursuant to successful invocation of the Battle procedure is

there was no need to answer the question in order to decide the motion because "we may assume that there is a right to self-representation on appeal in Pennsylvania; yet, even so, ... the right, even if deemed constitutionally-based, is not absolute." Id. at 282 (citing Commonwealth v. Jermyn, 551 Pa. 96, 709 A.2d 849 (1998)) (court may refuse request to proceed pro se even at trial phase in order minimize disruptions, avoid inconvenience and delay, maintain continuity and avoid confusing the jury); Commonwealth v. Rogers, 537 Pa. 581, 645 A.2d 223 (1994) (an appellant is not permitted to proceed pro se after counsel had already filed appellate briefs on his behalf). Thus, we denied counsel's request to withdraw so that the appellant could proceed pro se specifically because such procedure would "unnecessarily impede and completely disrupt an already delayed appellate process." Staton, 12 A.3d at 283. The implication of Martinez, as exemplified by Staton, is that, at a minimum, the Court need not be so concerned with the PCRA appellant's personal preferences concerning self-representation as had formerly been assumed.

12. Presumably, retention of private counsel would be on a pro bono basis, as appears to have occurred in this appeal with the entry of Ms. Himebaugh's appearance.

inapposite to the remedy provided where counsel successfully petitions to withdraw. *See Commonwealth v. Maple*, 385 Pa.Super. 14, 559 A.2d 953, 955 (1989) (where appointed post-conviction counsel has been permitted to withdraw, on the basis of a *Turner/Finley* letter, "the appointment of second counsel ... is unnecessary and improper."). Consequently, the *Battle* procedure has the effect of granting greater rights to those petitioners who assert *pro se* claims of PCRA counsel's ineffectiveness than those petitioners whose counsel successfully withdraw from representation. Finally, the procedure could also engender remands for the appointment of new counsel *ad infinitum* if the client continues to disagree with subsequent counsel's pursuit of less than all of the issues the client deems meritorious.

The *Battle* procedure calls to mind the colloquial expression of placing the cart before the horse. The Superior Court's misapprehension of our holding in *Ellis II* has created a unitary review paradigm that requires it to prematurely acknowledge, at least tacitly, that the issues foregone by counsel provide a more reasonable prospect for success, and counsel, therefore, is ineffective for not pursuing them, when it has yet to determine whether the actual claims advanced by counsel on appeal will provide an appellant with the relief he desires. Clearly, the requisite *Strickland*[13] prejudice cannot be established if counsel's appellate advocacy ultimately carries the day. Thus, in this context, there can be no claim of ineffective assistance, and counsel need not be called upon to articulate a reasonable legal basis for not including the foregone claims. As we succinctly noted in *Ellis II*, "While criminal defendants often believe that the best way to pursue their appeals is by raising the greatest number of issues, actually, the opposite is true: selecting the few most important issues succinctly stated presents the greatest likelihood of success." *Ellis II*, 626 A.2d at 1140–41. It is well settled that appellate counsel is entitled, as a matter of strategy, to forego even meritorious issues in favor of issues he believes pose a

13. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

greater likelihood of success. *See Commonwealth v. Robinson,* 581 Pa. 154, 864 A.2d 460, 479 n. 28 (2004), *cert denied,* 546 U.S. 983, 126 S.Ct. 559, 163 L.Ed.2d 470 (2005) ("This process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.") (quoting *Smith v. Murray,* 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986)); *Jones v. Barnes,* 463 U.S. 745, 751–52, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) (observing that "experienced advocates since time beyond memory emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues"). This widely accepted standard in the appellate advocacy arena would be inverted if we were to accept the *Battle* procedure implemented by the Superior Court. Such a requirement diminishes, if not entirely defeats, the goal sought to be achieved through focused appellate advocacy. *See Barnes,* 463 U.S. at 754, 103 S.Ct. 3308 (1983) ("For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every colorable claim suggested by a client would disservice the very goal of vigorous and effective advocacy.").

In addition, the *Battle* procedure, at least as applied by the Superior Court in this case, allows certain petitioners to avoid this Court's restrictions on serial requests for post-conviction relief. *See Commonwealth v. Lawson,* 519 Pa. 504, 549 A.2d 107, 112 (1988) ("[A] second or any subsequent post-conviction request for relief will not be entertained unless a strong prima facie showing is offered to demonstrate that a miscarriage of justice may have occurred."); *see also Commonwealth v. Bond,* 572 Pa. 588, 819 A.2d 33, 52 (2002) ("Permitting a PCRA petitioner to append new claims to the appeal already on review would wrongly subvert the time limitation and serial petition restrictions of the PCRA."). Instantly, the Superior Court's order not only granted appointment of new counsel but also directed the collateral review process to begin anew. *See Jette, supra* at ¶ 17 ("Newly appointed counsel should ... prepare a new, amended PCRA petition raising those claims

counsel considers meritorious after a thorough investigation."). Even in those cases where appellate counsel asserts a claim of his own ineffective assistance, we do not remand the case to start over or add new claims. Rather, when remand for the appointment of new counsel is appropriate pursuant to *McBee*, the court's remand is limited to conducting an evidentiary hearing on the issue of appellate counsel's ineffective assistance. *See Commonwealth v. Green*, 551 Pa. 88, 709 A.2d 382 (1998), *Commonwealth v. Ciptak*, 542 Pa. 112, 665 A.2d 1161 (1995), and *Commonwealth v. Shannon*, 530 Pa. 279, 608 A.2d 1020 (1992). Of further significance, at least in this case, is the fact that prior PCRA counsel, Michael P. Marryshow, did present the ineffectiveness of trial counsel claims to the PCRA court that Appellee now wants the Superior Court to review. Thus, even if attorney Marryshow would have been inclined to assert his own ineffectiveness for failing to preserve those claims for further review by the Superior Court, the *McBee* remedy of appointment of new counsel and remand for an evidentiary hearing would be superfluous as said hearing was already held, and the claims were addressed and rejected by the PCRA court.

In essence, the *Battle* procedure affords certain criminal defendants, *i.e.*, those who submit *pro se* allegations of appellate counsel's ineffectiveness on appeal, the opportunity to forward claims of their current counsel's ineffectiveness in addition to those claims presented in their counseled brief whenever the Superior Court determines that an appellant has shown a colorable claim of ineffectiveness. The effect is to allow consideration of what would be a second PCRA petition along with the first petition. We recently rejected a similar hybrid, unitary review process, albeit in the context of collateral claims being reviewed on direct appeal, in *Commonwealth v. Liston*, 602 Pa. 10, 977 A.2d 1089, 1094–95 (2009) ("disapprov[ing] of the *sua sponte* decisional 'rule' the Superior Court adopted, which would require trial courts to afford criminal defendants the opportunity to forward claims of ineffectiveness [ (usually deferred pursuant to *Grant* )] in addition to claims of trial court error on direct appeal, *i.e.*, hybrid, unitary

review, whenever they determine that a PCRA petitioner has proven entitlement to reinstatement of direct appeal rights *nunc pro tunc.*") (Castille, C.J., concurring, joined by Saylor, J., & Eakin, J.). This approach realizes a concern expressed by Chief Justice Castille's concurrence in *Liston* by "arbitrarily provid[ing] what is in effect a **third** round of review for certain defendants." *Id.* at 1096 (emphasis in original). The unverified assumption in the lower court's attempt to skirt the PCRA is that there are, or may be, meritorious claims that will be waived if the courts rely on counsel's limitation of issues raised on appeal. However, we presume that counsel is effective and has raised all meritorious issues.

■ Consequently, we find that the Superior Court's fundamental misapprehension of the governing principles this Court laid out in *Ellis II,* as further exemplified in *Rogers* and *Pursell,* necessitates our rejection of its implementation of the so-called *Battle* procedure. Therefore, we reiterate that the proper response to any pro se pleading is to refer the pleading to counsel, and to take no further action on the pro se pleading unless counsel forwards a motion. Moreover, once the brief has been filed, any right to insist upon self-representation has expired. See *Staton,* 12 A.3d at 282 (citing *Rogers, supra.*).[14]

14. We recognize that *Ellis* involved a direct appeal. Nonetheless, we find that Appellee's argument that in the PCRA context, given its serial petition and time-bar restrictions, he "must raise all claims of ineffective assistance of counsel at this stage ... or forever waive those claims," Appellee's brief at 9, is contrary to this Court's recent jurisprudence, which we realize was decided after the panel issued its decision in this case. See *Commonwealth v. Colavita,* 606 Pa. 1, 993 A.2d 874, 893 n. 12 (2010) (unanimous opinion) ("claims of PCRA counsel ineffectiveness may not be raised for the first time at the direct appeal level, much less at the discretionary appeal level.") (citing *Commonwealth v. Pitts,* 603 Pa. 1, 981 A.2d 875, 880 n. 4 (2009)). The waiver of such claims, however, is not a foregone conclusion. While difficult, the filing of a subsequent timely PCRA petition is possible, and in situations where an exception pursuant to § 9545(b)(1)(i-iii) can be established a second petition filed beyond the one-year time bar may be pursued. Moreover, if an appellant remains adamant that the claims foregone by counsel provide the better chance for success, he can avoid the potential loss of those claims by timely exercising his desire to self-represent or retain private counsel prior to the appeal. In any event, appellate courts are in no position to accelerate consideration of claims of current appellate counsel's ineffectiveness where that counsel is ad-

Given our primary holding rejecting the *Battle* procedure, all that remains to be decided is the issue that Appellee's original PCRA counsel actually forwarded. That issue was not passed upon by the panel below, though it was fully briefed, and it has not been accepted for review or briefed here. For the foregoing reasons, we vacate the order of the Superior Court and remand the matter to that court for proceedings consistent with this opinion. Jurisdiction is relinquished.

Chief Justice Castille and Justices EAKIN and McCAFFERY join the opinion.

Chief Justice CASTILLE files a concurring opinion in which Justice ORIE MELVIN joins.

Justice SAYLOR files a concurring opinion.

Justice BAER files a concurring and dissenting opinion in which Justice TODD joins.

Chief Justice CASTILLE, concurring.

I join the Majority Opinion. I write separately to respond to some points forwarded by Mr. Justice Baer in his Concurring and Dissenting Opinion.

Preliminarily, I note that, if the Superior Court had been choosing an appropriate vehicle, it would have been hard-pressed to find a more aptly named case for the unwieldy procedure the court implemented in *Commonwealth v. Battle*, 879 A.2d 266 (Pa.Super.2005). As the Majority explains, the procedure obviously cannot stand under: 1) our governing cases such as *Commonwealth v. Ellis*, 534 Pa. 176, 626 A.2d

vancing issues on his client's behalf, and, thus, the ineffectiveness claims may never come to fruition.

Accordingly, we find that whatever difficulty exists in presenting claims of ineffectiveness of PCRA counsel, it provides insufficient justification for abandoning our long-standing prohibition of hybrid representation. Moreover, we must give deference to the General Assembly's intent to bring litigation to an end, as reflected by its passage of the 1995 amendments to the PCRA, by its implementation of "a scheme in which PCRA petitions are to be accorded finality." *Commonwealth v. Peterkin*, 554 Pa. 547, 722 A.2d 638, 642 (1998).

1137 (1993); 2) a proper understanding of what is encompassed by the right to counsel; 3) a proper understanding of the deference due to counsel; and 4) an appreciation of this Court's more recent cases (which I recognize were decided after the panel issued its decision in this case), addressing whether PCRA[1] appeals can and should become the repository for what are, in effect, serial PCRA petitions assailing PCRA counsel's representation. *See Commonwealth v. Colavita,* 606 Pa. 1, 993 A.2d 874, 893 n. 12 (2010) (unanimous opinion) ("[C]laims of PCRA counsel ineffectiveness may not be raised for the first time at the direct appeal level, much less at the discretionary appeal level.") (citing *Commonwealth v. Pitts,* 603 Pa. 1, 981 A.2d 875, 880 n. 4 (2009)).

I write to address two points made in Justice Baer's Concurring and Dissenting Opinion, with which I respectfully disagree. First, Justice Baer does not agree that the *Battle* procedure improperly provided petitioners with an additional round of collateral review. Respectfully, in my view, it certainly did.

The PCRA appeal in this case was briefed in the Superior Court and was ready for disposition—until the counseled appellant Jette (appellee here) forwarded his *pro se* Petition for Remand, as authorized by the *Battle* procedure. In accordance with *Battle,* the subject of the Petition was the performance of PCRA appeal counsel, with Jette faulting counsel for failing to indulge Jette's whim to assert additional claims. The Petition was, for all purposes, a serial PCRA petition, focused solely upon PCRA counsel.

Indeed, the Petition was treated as such by the panel below. Rather than merely referring the *pro se* pleading to counsel for whatever action counsel might deem appropriate, as our decision in *Ellis* clearly would command, the panel, per *Battle,* ordered counsel to explain himself to the court. This is no trivial matter. When PCRA petitions are formally filed, the lawyer under attack is called upon to answer only if a sufficient proffer has been made to prove arguable merit and

1. 42 Pa.C.S. §§ 9541–9546.

*Strickland*[2] prejudice, and an issue of material fact concerning counsel's strategy remains for resolution. The *Battle* procedure effectively incorporates a serial PCRA process, while casting aside the presumption that lawyers are effective. Moreover, the panel's mandate, after the ensuing twenty month delay, included removal of PCRA appeal counsel and appointment of new counsel. It is pure fiction to treat: 1) the claim that PCRA appeal counsel was ineffective; 2) the process of an appellate court assuming the claim has merit and caused prejudice, and directing counsel to explain himself; and 3) the relief of ordering summary removal of counsel and remand—as encompassing mere review of "already-asserted PCRA claims."

Further proof of this fiction is that the case was remanded for new counsel "to investigate" the claims the panel assumed were meritorious and to "prepare a new, amended PCRA petition raising those claims counsel considers meritorious after a thorough investigation." If the mandate comprised mere review of already-asserted claims, the panel could have simply directed the filing of a new brief premised upon the existing record. But, even this goes too far: the reality here is that the claims appellee faulted his lawyer for failing to include may have been asserted in the PCRA court, but they were not asserted on appeal—until the Superior Court, through *Battle,* inserted itself into the client-counsel relationship and invited the client to file an appellate-level serial PCRA petition attacking his PCRA appeal counsel. In short, the *Battle* procedure obviously implicates *Pitts, Commonwealth v. Liston,* 602 Pa. 10, 977 A.2d 1089 (2009), and *Colavita,* and the Majority rightly rejects the procedure, in part, because of this reality.

Second, Justice Baer would devise a rule allowing the counseled appellant an extra window of thirty days after appellate counsel files a brief on his behalf within which to review the brief and decide whether to proceed *pro se.* Perhaps this proposed procedure should be called the "Skirmish"

2. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

rule, to distinguish it from *Battle.* In any event, I do not support the procedure, which would obviously be in tension with *Pitts, Liston* and *Commonwealth v. Ligons,* 601 Pa. 103, 971 A.2d 1125 (2009), and would implicate overruling footnote 12 in *Colavita.* 993 A.2d at 893 n. 12. Those authorities amply explain why we are not obliged to devise *ad hoc* procedures to allow a represented PCRA petitioner to act upon concerns with the performance of PCRA appeal counsel.

I recognize that if the procedure suggested by Justice Baer were confined to claims that were raised in the PCRA court, but not pursued in counsel's appellate brief, it would be distinguishable from the procedure at issue in *Colavita, Pitts,* and related cases. But, I do not support adoption of a cumbersome procedure, designed merely to afford criminal defendants on collateral appeal in effect a veto power over the contents of the briefs prepared by their court-appointed attorneys, and a second chance to decide whether to represent themselves. The legal foundation for this Court's earlier expressions of a "right" to self-representation was removed when the U.S. Supreme Court decided *Martinez v. Court of Appeal of California,* 528 U.S. 152, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000). The right to self-representation on appeal not being secure, I see no reason to devise an *ad hoc* procedure to allow for belated invocations—particularly since, in virtually all instances, it will be of little ultimate benefit to the client, and it will frequently burden the appellate court with hybrid or unintelligible pleadings. *Id.* at 163, 120 S.Ct. 684 ("The requirement of representation by trained counsel implies no disrespect for the individual inasmuch as it tends to benefit the appellant as well as the court."); *Ellis,* 626 A.2d at 1140 ("Tails should not wag dogs. Merely because an appellant believes that the irrelevant is relevant is no reason to turn the system on its head and solemnly contemplate the wisdom of a person who does not have the sense to be guided by experts in an area where he himself possesses no expertise.").

Moreover, even assuming that this Court would one day find an independent basis in law for conferring or recognizing such a right, the decision to proceed with counsel, once made,

should not include reservation of a veto power and a power to change one's mind concerning counsel, after counsel has already been put to the task. The procedure inverts the attorney-client relationship. Just as defendants have no "right" to taxpayer-financed counsel of their choice, I see no reason in law or logic to assume they have a right to dictate the issues to be pursued on collateral appeal (or direct appeal for that matter), once counsel is appointed. The proper repository for complaints concerning counsel is the PCRA, and not a cumbersome process once the case is already on appeal and briefed. Furthermore, because the proposed procedure, in essence, would merely provide an end-around the PCRA, I cannot support it.

Justice ORIE MELVIN joins this concurring opinion.

Justice SAYLOR, concurring.

Over the years I have spent on the appellate bench, I have come to see the great emphasis which, of necessity, is placed on the *administrative* aspect of the administration of justice. Still, it remains troubling that courts shape the review process based on presumptions and pronouncements that are not empirically verified, while sometimes demonstrating limited sensitivity toward other vital interests at stake in criminal justice.

Here, ultimately, I agree with the majority that the balancing of the public and private interests involved justifies restrictions on hybrid and self-representation on appeal. Nevertheless, I remain circumspect about the reasoning supplied on a number of points. For example, I believe courts should continue to reflect on the weight being accorded to the presumption of effectiveness, particularly in light of the demonstrated need for material improvement in the provision of legal services to indigent defendants. *See, e.g., Commonwealth v. Walter,* 600 Pa. 392, 397–404, 966 A.2d 560, 563–67 (affirming a capital judgment of sentence, while describing various of the appellant's claims as "unintelligible," underdeveloped, "vague and confusing," waived, "incomprehensible,"

and "incapable of review"), *cert denied* —— U.S. ——, 130 S.Ct. 743, 175 L.Ed.2d 522 (2009). *See generally* REPORT OF THE NATIONAL RIGHT TO COUNSEL COMMITTEE, JUSTICE DENIED: AMERICA'S CONTINUING NEGLECT OF OUR CONSTITUTIONAL RIGHT TO COUNSEL (Apr.2009) (embodying the analysis of a bipartisan committee of independent experts representing all segments of the Nation's justice system, identifying systemic deficiencies, and recommending reform measures).

I also have substantial difficulty with the notion that "appellate counsel is entitled, as a matter of strategy, to forego even meritorious issues in favor of issues he believes pose a greater likelihood of success." Majority Opinion, *Op.* at 183–84, 23 A.3d at 1043. While this may be true in the abstract—assuming that foregone issues are, in fact, materially weaker than those actually litigated in an appeal—doubt is cast on such assumption in instances in which the claims actually advanced by counsel are adjudged to be meritless. To the degree there is difficulty in predicting which issues have the best chance of succeeding before an appellate court, the allocation to lawyers of the ability to forfeit meritorious claims seems highly questionable, at least in the absence of effective client consultation. The fairness of such allocation is particularly debatable in view of the barriers to judicial review of appellate-counsel stewardship, including the strong presumption of effectiveness and statutory and court-imposed limitations placed on the review.

In light of the above, I am sympathetic to the Superior Court's efforts to implement a procedure by which, at least upon a non-frivolous complaint by a criminal defendant, judicial review of claim selection decisions by his appellate counsel is not evaded. Again, however, on balance, I ultimately agree with the majority that the *Battle* procedure simply is too burdensome.

Justice BAER, concurring and dissenting.

I agree with the Majority's individual mandate, and with its broader decision to reject the Superior Court's *Battle* procedure. While I have no doubt that procedure was well intentioned, it was also cumbersome and inconsistent with this

Court's announcement in *Commonwealth v. Ellis*, 534 Pa. 176, 626 A.2d 1137 (1993) (*Ellis II*). Thus, I agree that *Battle* should be overruled. Respectfully, however, I do not join in the Majority's further criticism that the *Battle* procedure improperly provided certain petitioners an "additional round" of collateral review.

I now turn to the Majority's proposed solution to the problem of *pro se* filings by represented PCRA petitioners. The Majority's answer is to import the well-established rules applicable to direct appeals. As the Majority recognizes, courts in Pennsylvania do not countenance hybrid representation. *Ellis II*, 626 A.2d at 1139. Thus, the rules for proceeding on direct appeal are clear. If an indigent appellant wishes to raise claims different from those that were chosen by his counsel, he must either: (1) file a petition to terminate counsel's services and proceed with the appeal *pro se;* or (2) accept his counsel's representation, and wait until collateral review to assert his claims of counsel's ineffectiveness indirectly. *Id.* The first option carries with it a time limitation: an appellant may not terminate counsel's services and proceed *pro se* if counsel has already filed an appellate brief. *Commonwealth v. Rogers*, 537 Pa. 581, 645 A.2d 223 (1994). We "drew the line" where we did in *Rogers* because we believed that it adequately balanced the appellant's interest in self-representation with a broader interest in avoiding confusion and delay. *Id.* at 224. We justified the limitation by noting that dissatisfied appellants may still turn to collateral relief. *Id.*

The Majority now imports these same rules, including the *Rogers* deadline, into the PCRA appeal context. Under the Majority's new pronouncement, the petitioner may proceed *pro se* on a PCRA appeal at any time before his brief is filed. In my view, this line that we drew in *Rogers* should not be scribed in the same place for PCRA appeals. The original justification for the administrative imposition in *Rogers* (*i.e.*, the ability to seek collateral relief) is largely illusory in the PCRA context, as a second round of relief is unlikely because of the jurisdictional nature of the PCRA's time-bar, as inter-

preted by this Court's precedent.[1] Thus, under the Majority's rule, if, for example, a PCRA appellant wishes to raise three claims that had been advanced but rejected by the PCRA court, and discovers that his appellate counsel has already filed a brief raising only one (or perhaps even none) of those claims, the omitted claims will escape review during disposition of the initial PCRA appeal under any circumstances, leaving the petitioner with the option of attempting to file a second PCRA petition, notwithstanding significant hurdles mentioned above.[2]

In light of the restrictions on serial PCRA petitions, and that PCRA petitioners may not even be aware of the issues counsel chooses to advance on appeal until the brief is actually filed, I respectfully suggest that we should extend the deadline for proceeding *pro se* on appeal to 30 days from the date that the PCRA appellate brief is filed and served. This will allow the petitioner an opportunity to review the brief and decide whether to proceed *pro se*. If he timely asserts his desire to litigate *pro se*, the Superior Court would remand for a *Grazier* hearing and the case would proceed accordingly.[3] This pro-

1. *See* 42 Pa.C.S.A. § 9545 (subject to three limited exceptions, any PCRA petition must be filed within one year of the date that the petitioner's judgment of sentence becomes final); *Commonwealth v. Watts*, 611 Pa. 80, 23 A.3d 980 (2011) (PCRA provides the exclusive remedy for claims that fall within its ambit, and the PCRA's time limits are mandatory and jurisdictional in nature); *Commonwealth v. Lawson*, 519 Pa. 504, 549 A.2d 107, 112 (1988) ("[A] second or any subsequent post-conviction request for relief will not be entertained unless a strong *prima facie* showing is offered to demonstrate that a miscarriage of justice may have occurred.")

2. I understand that the issue of whether a defendant has a right to self-representation on appeal is an open question under Pennsylvania law. *See Commonwealth v. Staton*, 12 A.3d 277 (Pa.2010). In *Staton*, we directed counsel to file an already-prepared brief on his client's behalf in a direct capital appeal, even though the defendant expressed a desire to discharge counsel and proceed *pro se*. We did so under the specific facts of that case, where the appellate process had already been delayed, even though *Rogers* would appear to permit self-representation before the appellate brief is filed.

3. *Commonwealth v. Grazier*, 552 Pa. 9, 713 A.2d 81 (1998) (trial court must determine if decision to proceed *pro se* is knowing, intelligent, and voluntary). Of course, if the defendant files anything other than a

posed course of action would keep in place the prohibition against hybrid representation and keep delays to what I view as an acceptable level, properly balancing a petitioner's right to obtain one thorough and meaningful appellate review of his PCRA claims (and any right he may have to self-representation on appeal) with society's interest in finality.[4]

Justice TODD joins this opinion.

request to proceed *pro se,* that filing would be simply forwarded to counsel.

4. I would also submit that it is entirely possible to proceed *pro se* on PCRA appeal without alleging ineffectiveness of PCRA counsel, and without implicating any concerns about "additional rounds" of collateral review. If the defendant proceeds *pro se* on PCRA appeal, he could simply raise any of the claims that he litigated in his PCRA petition, without having to allege PCRA appellate counsel's ineffectiveness (because, of course, at that point there is would be no PCRA counsel).