J-S35027-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| FRANKLIN JOHONOSON | |
| Appellant | No. 1989 MDA 2013 |

Appeal from the Judgment of Sentence of September 23, 2013
In the Court of Common Pleas of Lancaster County
Criminal Division at No.: CP-36-CR-0004190-2012

BEFORE: DONOHUE, J., WECHT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY WECHT, J.:                    **FILED SEPTEMBER 09, 2014**

Franklin Johonoson appeals his September 23, 2013 judgment of sentence. We affirm.

The trial court aptly summarized the factual and procedural history of this case as follows:

> On July 12, 2009 at approximately 8:00 a.m., Vonda Kirchner [("Kirchner")], the owner of John's Gulf Service Station and Convenience Store, received a visit at her home from George Snyder [("Snyder")]. Snyder informed Kirchner that, while he was on his way to the VFW post next door to the service station, he noticed that one of the large plate glass windows in front of the convenience store was broken. Kirchner, who lived in a home behind the service station, walked with Snyder to the convenience store to assess the damage. When she arrived, Kirchner observed the broken window and noticed that debris and lottery tickets were scattered on the ground outside of the

_____

[*]    Retired Senior Judge assigned to the Superior Court.

store. After examining the exterior, Kirchner entered the convenience store and immediately saw that the floor was littered with dry goods and that lottery tickets and cigarettes were missing from behind the counter. Additionally, Kirchner observed that blood was smeared on the floor, the lottery ticket counter, and on the shards of glass that remained in the front window. Finally, Kirchner saw that each of the store's three cash registers had been pried open, and that coins and several sets of keys were missing.

After surveying the damage, Kirchner and Snyder contacted police. Officer Elliot Tirado of the Lancaster City Police Department was dispatched and arrived at the scene at 9:24 a.m. Once he had interviewed Kirchner and observed the damage, Officer Tirado contacted Sergeant Bradley Shenk to assist him in processing the scene. Upon his arrival, Sergeant Shenk located and processed two fingerprints on the countertop directly inside of the broken plate glass window. Meanwhile, Officer Tirado collected six blood samples from inside of the store, including samples from the top of the deli counter, the interior floor near the cash register, and the lottery ticket counter. Additionally, Sergeant Shenk collected a blood sample from the outside of the store on the ground in front of the broken window. Finally, Officer Tirado inventoried the items that were missing from the convenience store and photographed the damage.

In July 2009, Detective Toby Hickey, the detective assigned to investigate the John's Gulf Station burglary, sent the blood samples collected from the crime scene to the Pennsylvania State Police Serology Laboratory. On January 1, 2010, Detective Hickey received a report from Serologist Brett Albright [("Albright")] indicating that the samples contained human blood. Albright then transmitted the samples collected from the top of the deli counter and the interior floor of the service station to the Pennsylvania State Police DNA Laboratory for additional testing.

On January 31, 2011, Amy Irwin [("Irwin")], an expert in DNA identification, examined the blood samples and created a DNA profile for each sample. Irwin determined that both of the samples contained the same DNA profile and that the profile was produced by an unidentified male. The DNA profile was then entered into the Combined DNA Indexing System ("CODIS"),

which produced a hit indicating that the profile matched a known blood sample from [] Franklin Johonoson.

Irwin notified Detective Hickey of the findings and that the Manheim Township Police Department, also located in Lancaster County, had recently submitted a DNA profile that matched Johonoson in an unrelated case.

On April 7, 2011, at Detective Hickey's direction, Detective Lieutenant Clark Bearinger of the Lancaster City Police Department obtained a search warrant permitting him to take a buccal swab from Johonoson at SCI Mercer. Due to miscommunication, the swab was never forwarded to the Pennsylvania State Police Laboratory for comparison with the samples from John's Gulf Station. The oversight was not uncovered until Detective Hickey reviewed the case file in May 2012. To remedy the error, Detective Hickey immediately requested and received permission from Detective Sergant Keith Kreider of the Manheim Township Police and the Pennsylvania State Police to compare Manheim Township's sample of Defendant's DNA with the blood recovered from John's Gulf Station.

On May 12, 2012, Ellen O'Brien [("O'Brien")], an expert in DNA identification and comparison, compared the DNA profiles obtained from the blood found at John's Gulf Station and the known sample of Johonoson's DNA collected by the Manheim Township Police Department, and determined that the two profiles matched.

In addition, Detective Hickey, a latent fingerprint examiner, compared the two fingerprints lifted from the counter in the service station to Johonoson's known fingerprints. Ultimately, Detective Hickey determined that the fingerprints from the crime scene matched Johonoson's right ring and little fingers. As a result of O'Brien's report and his own latent fingerprint comparison, on September 20, 2012, Detective Hickey charged Johonoson with one count of burglary.[1]

_____

[1]    18 Pa.C.S. § 3502(a). The Commonwealth also charged Johonoson with one count each of theft by unlawful taking and criminal mischief. 18
*(Footnote Continued Next Page)*

- 3 -

On August 9, 2013, Johonoson filed a pre-trial motion to suppress evidence. In his motion, Johonoson claimed that Detective Hickey did not have the authority to use Manheim Township's sample of Johonoson's DNA for identification purposes. A suppression hearing was conducted on August 12, 2013, at which time Johonoson additionally asserted a motion to dismiss for pre-arrest delay. At the conclusion of the hearing, the court denied both of Johonoson's motions.

On August 12, 2013, following a two-day jury trial, Johonoson was found guilty of the burglary of John's Gulf Station and a pre-sentence investigation was ordered. Prior to sentencing, Johonoson filed a *pro se* "pre-sentence (written) oral motion for extra ordinary [*sic*] relief."[4][2] On September 23, 2013, Johonoson was sentenced to three to seven years' incarceration, concurrent to a sentence he was already serving at docket number 4407-2009. The court specifically indicated that Johonoson was only to begin accruing time credit in the case at bar on the date of the sentencing hearing.

[4] Johonoson's *pro se* motion was largely incomprehensible, and, as a result, the court was unable to address it on the merits.

On October 2, 2013, Johonoson filed a post-sentence motion comprised of a motion for arrest of judgment, motion for new trial, and motion to modify sentence, all of which were denied on October 11, 2013. On October 7, 2013, the Commonwealth

_(Footnote Continued)_ _____

Pa.C.S. §§ 3921, and 3304(a)(5), respectively. However, the Commonwealth withdrew both of these charges at the suppression hearing.

[2] We note that, at the time that Johonoson filed this *pro se* motion, he was represented by counsel. Although the trial court made the motion part of the certified record, the court did not rule on it. Because hybrid representation generally is prohibited in Pennsylvania, *see Commonwealth v. Morgan*, 39 A.3d 419, 420 (Pa. Super. 2012) (citing *Commonwealth v. Ellis*, 626 A.2d 1137, 1139 (Pa. 1993), and *Commonwealth v. Jette*, 23 A.3d 1032 (Pa. 2011)), the trial court was correct in declining to rule on the motion while Johonoson was represented by counsel.

submitted a motion to modify sentence, indicating that the court did not order the correct amount of restitution.[6] The court directed Johonoson to respond to the Commonwealth's motion within thirty days, and, when Johonoson failed to do so, the Commonwealth submitted a petition to make rule absolute on November 13, 2013. Accordingly, on January 7, 2014, the court granted the Commonwealth's motion and modified Johonoson's restitution from $3,360 to $3,660.

> [6] At the sentencing hearing, the Commonwealth asked the court to order $3,660 in restitution. However due to a clerical error, only $3,360 was ordered on the record.

Trial Court Opinion ("T.C.O."), 1/17/2014, at 1-2 (minor modifications for clarity; some footnotes omitted).

On November 7, 2013, Johonoson timely filed a notice of appeal. On November 8, 2013, the trial court ordered Johonoson to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Johonoson timely complied. On January 17, 2014, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a).

Johonoson presents the following issues for our consideration:

1. Whether the trial court erred and/or abused its discretion, and denied Johonoson due process in denying, after a hearing, Johonoson's pre-trial motion to suppress DNA evidence and Johonoson's motion to dismiss for prosecutorial delay.

2. Whether the trial court erred and/or abused its discretion in denying Johonoson's motion for a directed verdict when the Commonwealth's evidence was insufficient as a matter of law to convict Johonoson for burglary.

3. Whether the trial court erred and/or abused its discretion in denying Johonoson's post-sentence motion for arrest in judgment and motion for new trial and motion to modify sentence because:

(a) The Commonwealth's evidence submitted at trial was insufficient as a matter of law to sustain the verdict of guilty for burglary because the Commonwealth did not prove beyond a reasonable doubt all elements of burglary;

(b) Johonoson was not awarded proper time credit;

(c) Johonoson was ordered to pay restitution even though the charges of theft and criminal mischief (to which restitution would have been properly ordered were withdrawn by the Commonwealth.

Brief for Johonoson at 6 (minor modifications for clarity).

In his first issue, Johonoson argues that the trial court erred in denying his motion to suppress DNA evidence, and his motion to dismiss for prosecutorial delay. Johonoson combines these two ostensibly distinct issues, and structures his claim as one of a violation of due process. *See* Brief for Johonoson at 6. However, Johonoson has failed to develop either of these claims in a manner sufficient to justify our review.

Rule 2119(a) of the Pennsylvania Rules of Appellate Procedure provides that "[t]he argument shall . . . have . . . the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a). An appellant's failure to discuss pertinent facts or cite legal authority will result in waiver of that particular issue. *Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007).

Johonoson's argument, as it relates to his motion to suppress, spans roughly one page, and includes only a single case, *State v. Hauge*, 79 P.3d 131 (Hawaii 2003). Johonoson merely recites the holding in *Hauge*, and

notes that the trial court relied upon it. Johonoson makes no effort to apply ***Hauge*** to the instant case. Instead, Johonoson simply asserts that his "right to be free from unreasonable search and seizure was violated," and that he "was denied the right to contest and/or confront th[e] evidence." Brief for Johonoson at 11. Johonoson provides no discussion whatsoever of the precise nature of his claim. Without meaningful discussion of the legal authorities that he relies upon, we cannot review the merits of Johonoson's general challenge to the "lawfulness of the procurement of [his DNA] profile." ***Id.*** In short, his undeveloped claim does not present a viable legal theory upon which relief can be granted. Hence, the issue is waived.

We also find that Johonoson's argument, relating to the trial court's denial of his motion to dismiss for prosecutorial delay, is similarly underdeveloped. In his brief, Johonoson dedicates the majority of his discussion on this issue to recounting the procedural history of the case. Although he cites two cases that purportedly support his contention, Johonoson has failed to provide any analysis or application of those authorities to the facts and circumstances at bar. ***See*** Pa.R.A.P. 2119(b) ("Citations of authorities must set forth the principle for which they are cited."). Thus, Johonoson's first listed issue is waived in its entirety.

Next, Johonoson presents a challenge to the sufficiency of the evidence. Our standard of review is well-settled:

> We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in [the] light most favorable to the Commonwealth as verdict winner,

- 7 -

support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find [that] every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.

The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Mobley*, 14 A.3d 887, 889–90 (Pa. Super. 2010)

(quoting *Commonwealth v. Mollett*, 5 A.3d 291, 313 (Pa. Super. 2010));

*see Commonwealth v. Auker*, 681 A.2d 1305, 1314 (Pa. 1996).

Under the provision of the Crimes Code applicable at the time of Johonoson's offense, a person was guilty of burglary "if he enter[ed] a building or occupied structure, or separately secured or occupied portion thereof, with intent to commit a crime therein, unless the premises [were] at the time open to the public or the actor [was] licensed or privileged to enter." 18 Pa.C.S. § 3502(a).[3]

---

[3] The Pennsylvania General Assembly amended subsections 3502(a) and (b) by Act of July 5, 2012, P.L. 1050, No. 122, § 1, which took effect on September 4, 2012. Because Johonoson's burglary conviction arose from events that occurred in July 2009, we apply the pre-amendment definition of the offense, which, in any event, does not differ substantively from the amended statute in any aspect relevant to this case.

According to Johonoson, the Commonwealth failed to present evidence sufficient to establish beyond a reasonable doubt that he intended to commit a crime at the time that he entered John's Gulf Station. Brief for Johonoson at 16. We disagree. At trial, the Commonwealth presented extensive forensic evidence, which demonstrated that Johonoson entered John's Gulf Station. The Commonwealth presented evidence demonstrating that blood samples, which had been collected from the floor of the service station and from the deli counter therein, matched Johonoson's DNA profile. Additionally, the Commonwealth demonstrated that Johonoson's fingerprints matched the latent fingerprints that investigators lifted from the crime scene.

At trial, Kirchner, the owner of John's Gulf Service Station, testified that she closed the store at 8:00 p.m. on July 11, 2009, and that the store was not open to the public after closing. Kirchner further testified that she arrived the following morning to find that the store's large plate-glass window had been broken. Moreover, food and debris were scattered throughout the store, cigarettes and lottery tickets were missing, and each of the store's three cash registers had been pried open.

Viewing this evidence in the light most favorable to the Commonwealth and drawing all reasonable inferences in the Commonwealth's favor, we cannot conclude that the evidence presented at trial was "so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." **See Mobley**, *supra*. Rather, the

Commonwealth's trial evidence was sufficient to support the jury's conclusion beyond a reasonable doubt that Johonoson entered the service station with the intent to commit theft. Accordingly, Johonoson's sufficiency claim is without merit.

In his next issue, Johonoson claims that the trial court erred in failing to credit Johonoson for time served. Because Johonoson was incarcerated on other charges at the time that he was initially arraigned in this case, and remained incarcerated on both cases until the time of his sentencing in the instant case, he contends that the trial court should have credited him for time served at both docket numbers.

A sentencing court is required to give credit "for all time spent in custody as a result of the criminal charge for which a sentence is imposed as a result of the conduct on which such a charge is based." 42 Pa.C.S. § 9760(1). We have explained that a defendant is not entitled to "receiv[e] credit against more than one sentence for the same time served." *Commonwealth v. Merigris*, 681 A.2d 194, 195 (Pa. Super. 1996). Such "double credit" is prohibited both by the statutory language of Section 9760 and by the principle that a defendant be given credit only for "time spent in custody . . . for a particular offense." *Commonwealth v. Hollawell*, 604 A.2d 723, 725 (Pa. Super. 1992). At all relevant times, Johonoson was serving a sentence in another case and necessarily receiving credit for that time on that sentence. Accordingly, the trial court did not err in refusing to

award Johonoson double credit for the time that he served on this case prior to trial.

Johonoson's claim that the trial court erred in ordering him to pay restitution also presents a non-waivable challenge to the legality of his sentence. *Commonwealth v. Atanasio*, 997 A.2d 1181, 1182–83 (Pa. Super. 2010). "When we address the legality of a sentence, our standard of review is plenary and is limited to determining whether the trial court erred as a matter of law." *Commonwealth v. Pombo*, 26 A.3d 1155 (Pa. Super. 2011) (citation omitted). It is well-settled that the imposition of restitution is proper only when there is a direct causal connection between the underlying crime and the loss. *Commonwealth v. Harriott*, 919 A.2d 234, 238 (Pa. Super. 2007); 18 Pa.C.S. § 1106(a) ("Upon conviction for any crime wherein property has been stolen, converted or otherwise unlawfully obtained, or its value substantially decreased as a direct result of the crime . . . the offender shall be sentenced to make restitution.").

Instantly, Johonoson argues that "there was absolutely no evidence whatsoever that [he] stole lottery tickets, food items and/or broke two cash registers." Brief for Johonoson at 17. We disagree. There was a direct causal connection between the burglary and the damaged/stolen items for which Johonoson was ordered to reimburse the storeowner. In finding Johonoson guilty of burglary, the jury necessarily found that Johonoson entered into the store with the intent to commit a crime, in this case theft,

therein.    Consequently, Johonoson's claim that the trial court erred in ordering restitution is without merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/9/2014