J-S84022-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| TYRESE FORD | |
| Appellant | No. 3840 EDA 2015 |

Appeal from the PCRA Order Dated December 14, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0006600-2011

BEFORE: OLSON, J., SOLANO, J., and FITZGERALD, J.[*]

MEMORANDUM BY SOLANO, J.: **FILED January 20, 2017**

Appellant Tyrese Ford appeals *pro se* from the order denying his initial petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. Appellant claims that his trial counsel was ineffective and that his guilty plea was a product of this ineffective assistance of counsel. We grant counsel's petition to withdraw, deny Appellant's *pro se* Motion to Dismiss with Prejudice, and affirm the denial of Appellant's PCRA petition.

Appellant was charged with murder[1] and several weapons offenses in connection with the February 19, 2011 shooting of Christopher Spence.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] No degree was specified on the information.

Appellant's case was listed for trial on July 9, 2012.[2] On that day, Appellant's counsel, Kenneth Young, informed the Court that the Commonwealth had recently sent him a letter regarding additional discovery. Specifically, the letter stated that Dr. Samuel Gulino, Chief Medical Examiner for the City of Philadelphia, would testify at trial in place of a Dr. Hunt, who performed the autopsy on Spence and was unavailable. In addition, Dr. Gulino would testify that Spence suffered a contact gunshot wound, an opinion contrary to the opinion in Dr. Hunt's autopsy report. The letter also informed Appellant that the Commonwealth's firearms expert would testify that the bullet recovered from Spence's body was consistent with ammunition found during a search of Appellant's home. Finally, the Commonwealth provided a previously undisclosed statement by Commonwealth witness Dana McClamy, in which McClamy identified Appellant as the shooter. Appellant presented a motion *in limine* to exclude this new evidence. The court denied Appellant's motion *in limine*, but agreed to continue the case. PCRA Ct. Op., 12/14/15, at 1-2.

Also at the July 9, 2012 hearing, Appellant rejected an offer from the Commonwealth to plead guilty to third-degree murder and weapons offenses

_____

[2] As the PCRA court noted, "[t]he Notes of Testimony and court file for this hearing indicate that it was held on July 8, 2012, though the docket indicates that it was held on July 9, 2012." PCRA Ct. Op., 12/14/15, at 1 n.1. That discrepancy is not material to the disposition of this appeal.

in exchange for a recommendation of a 25 to 50-year sentence.   N.T., 7/9/12, at 26-28.

Finally, at the July 9, 2012 hearing, the trial court denied Appellant's motion to suppress ammunition found during a search of his home.  That motion was based on alleged deficiencies in the search warrant affidavit. N.T., 7/9/12, at 63-75.

At the next listing of Appellant's case, on December 10, 2012, Appellant entered into a negotiated guilty plea to one count of third-degree murder (18 Pa.C.S. § 2502) and one count of possession of a firearm without a license (18 Pa.C.S. § 6106).   In exchange for his plea, the Commonwealth agreed to withdraw the remaining charges against Appellant, and to recommend an aggregate sentence of eighteen to forty years' incarceration.    At the plea hearing, the Commonwealth proffered the following factual basis for the plea, to which Appellant agreed:

> On February 19, 2011, Latoya Lofton and Christopher Spence were present at the T&T Bar and Lounge at Hawthorne and Margaret Streets in Philadelphia.   Lofton stood next to [Appellant] at the bar for approximately seven minutes.   At some point that evening, [Appellant] and Spence had a verbal argument concerning whether Spence was inappropriately touching Dana McClamy, another young woman at the bar. During the course of the argument, [Appellant] said, "I don't fight like that" and showed the butt of a handgun that was secured in his waistband.  Both Lofton and Spence saw the weapon.   Loften attempted to intervene, between [Appellant] and Spence, but Spence reached around her and punched [Appellant] once in the face.   [Appellant] recoiled from the punch, drew the firearm, and shot Spence once in the chest. Spence was taken to Frankford Hospital, where he was pronounced dead from a single gunshot wound to the chest.

Following the shooting, [Appellant] returned home to his brother, to whom [Appellant] stated he had been in a fight over a girl and had ended up shooting a boy at the T&T Lounge. Ballistic examination of the bullet used to shoot Spence was consistent with ammunition recovered from [Appellant's] residence upon [Appellant's] arrest.

PCRA Ct. Op. at 3 (citing N.T., 12/10/12, at 11-21); N.T., 12/10/12, at 22.

During the plea colloquy, Appellant stated that apart from the Commonwealth's promises to withdraw certain charges and recommend an aggregate sentence of 18 to 40 years, no one promised him anything or threatened him in any way to induce him to plead guilty. N.T., 12/10/12, at 23. The trial court immediately imposed the negotiated sentence of 18 to 40 years' incarceration. Appellant did not file a direct appeal.

On November 21, 2013, Appellant filed a *pro se* PCRA petition. Attorney Daniel Silverman was subsequently appointed to represent him. On July 24, 2014, Attorney Silverman filed a no-merit letter pursuant to **Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). However, on November 20, 2014, Silverman filed an Amended PCRA Petition, claiming that trial counsel "rendered ineffective assistance in affirmatively misleading petitioner to believe that he would be eligible for 'pre-release' after serving nine years of his 18-year minimum when that was not true." Amended Petition at 10. According to the amended petition, Appellant "relied on this erroneous advice in deciding to plead guilty," and would have chosen to go to trial but for counsel's advice. **Id.** Appellant

- 4 -

attached an affidavit to his PCRA petition in which he stated that if his counsel had informed him that he would be required to serve eighteen years before he could be released, he "never would have taken the deal." Amended PCRA Petition, Ex. B.

The PCRA court held an evidentiary hearing on April 17, 2015, and later summarized the proceedings at that hearing as follows:

> [Appellant] presented testimony from Kenneth Young, Lamar Larke, and Lisa Robinson. The Commonwealth did not present any additional testimony.
>
> Mr. Young testified that he was prepared to take [Appellant]'s matter to trial prior to receiving the additional unfavorable discovery that he received a few days prior to July 9, 2012, and losing a motion to exclude this evidence. Young testified that following the receipt of this additional evidence . . . but prior to the Court's resolution of [Appellant]'s motions to exclude this evidence, the Commonwealth presented [Appellant] with an offer of 25 to 50 years['] incarceration, which [Appellant] rejected. Young further testified that, following the rejection of this first offer, the Commonwealth presented a modified offer of 18 to 40 years['] incarceration. Young testified that he first approached [Appellant] with the 18 to 40 year offer in the courthouse on December 10, 2012, in the presence of [Appellant]'s mother and aunt. Young further testified that, when meeting with [Appellant] and his family, Young informed [Appellant] that he could apply for prerelease after nine years, but that it would "virtually [be] like a one in a million chance." Additionally, Young stated that he informed [Appellant] that [Appellant] would be "a very good candidate for his minimum parole [at 18 years]...." Young testified that he informed [Appellant] that he would be younger than Young was at the time of sentencing when released from custody. Young also testified that, when discussing prerelease, he informed [Appellant] that "it's really hard. I don't know, maybe I heard of one person in my career get out on prerelease." Young additionally testified that he informed [Appellant] and his family that the majority of inmates serve 80% of their maximum sentence, but that [Appellant] would be a good candidate for release at his 18-year minimum due to his

young age and lack of a prior record. Young testified that he never told [Appellant] that he would be released after serving nine years of his sentence. Finally, Young testified that he learned at some later point that Pennsylvania had abolished the prerelease program on July 5, 2012.

Lamar Larke, [Appellant]'s uncle, testified that after consulting with Young he understood that [Appellant] would plead guilty and receive a sentence of 18 to 40 years['] incarceration. Larke further testified that it was his understanding that [Appellant] "would be able to come home or he'd be eligible to come home" after eleven years, with good behavior. Larke modified this testimony slightly under cross-examination to state that it was his understanding that [Appellant] would come home after eleven years, or possibly thirteen years, but definitely not that [Appellant] would have to serve the entirety of his eighteen year minimum. Larke also testified that this discussion with Young occurred on a date other than when [Appellant] pled guilty. Larke testified that, after having this discussion with Young, he and several other members of [Appellant]'s family consulted with each other and decided that it would be a good deal. Larke stated that Young never informed [Appellant]'s family that [Appellant] would face a "one in a million" chance to get out prior to his minimum, or that Young ever stated that he only knew of one person being granted prerelease.

Lisa Robinson, [Appellant]'s mother, testified that her first discussion with Young concerning [Appellant] pleading guilty occurred sometime close to the time of [Appellant]'s scheduled trial. Robinson testified that Young informed her that the deal offered to [Appellant] was "the best offer that he could get him and that – and in a certain amount of time he could ask for a prerelease." Robinson further clarified that it was her understanding that [Appellant] could ask for prerelease after seven years. Robinson testified that she had a meeting with Young, as well as two other family members, during which Young stated that [Appellant] "could be eligible for prerelease out of this 18 to 40 years, that in 11 years he would be eligible for prerelease." Robinson testified that every time Young mentioned the 18 to 40 year deal, he would also mention prerelease. Robinson further testified that this prerelease would be possible due to [Appellant]'s good behavior, should [Appellant] apply for prerelease. Like Larke, Robinson testified that Young did not discuss the likelihood of prerelease.

PCRA Ct. Op. at 4-7 (footnote and citations to the record omitted). Both parties filed post-hearing briefs.

On December 14, 2015, the PCRA court denied Appellant's petition. In an opinion filed that day, the court explained that the testimony of Young, which it found credible, established that Young informed Appellant that he could be eligible for prerelease after serving nine years of his sentence. PCRA Ct. Op. at 7. The PCRA court concluded that Young's advice regarding prerelease was incorrect because the prerelease program no longer existed at the time Appellant entered his plea. *Id.* The court credited Young's testimony that he told Appellant the following: (1) Appellant's odds of being released pursuant to the prerelease program were "one in a million;" (2) Young had only heard of one defendant in his entire (seventeen-year) career experience being released on prerelease; and (3) the majority of defendants serve approximately 80% of their maximum sentence. *Id.* The court found the testimony of Appellant's family members, to the extent it contradicted Young's testimony, was not credible. *Id.* at 8. The court found that until December 10, 2012, Appellant intended to proceed to trial, but that his trial strategy was "severely compromised" by the additional discovery revealed in July of 2012. *Id.* The court concluded that Appellant failed to prove prejudice — that is, that it was reasonably likely that but for Young's advice, he would have chosen not to plead guilty and to proceed to trial, where he faced a significant risk of being found guilty of first-degree murder. *Id.*

On December 21, 2015, Appellant, through Attorney Silverman, filed a timely notice of appeal. On December 31, 2015, Silverman filed a Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. 1925(b), stating he had concluded that that there were no issues of arguable merit to raise on appeal, and he intended to file an **Anders**[3] brief.

On February 1, 2016, Silverman filed a petition to withdraw. In that petition, counsel said he had sent Appellant a copy of his **Anders** brief. Counsel also stated that on January 27, 2016, Appellant notified counsel that he wished to proceed *pro se*. Silverman's petition to withdraw did not include an **Anders** brief.

On February 16, 2016, Silverman filed a petition for an extension of time in which to file the appellate brief, pending this Court's ruling on the petition to withdraw. Appellant attempted to file a *pro se* brief while counsel's motion to withdraw was still pending. On February 17, 2016, this Court forwarded that brief to Silverman with a letter, pursuant to **Commonwealth v. Jette**, 23 A.3d 1032 (Pa. 2011). On or around February 22, 2016, Appellant sent documents to this Court requesting an

---

[3] **Anders v. California**, 386 U.S. 738 (1967). Because this is an appeal from an order denying a PCRA petition, the proper filing would have been a petition to withdraw pursuant to **Commonwealth v Turner**, 544 A.2d 927 (Pa. 1988) and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). **See Commonwealth v. Wrecks**, 931 A.2d 717, 721 (Pa. Super. 2007).

extension of time in which to file his brief. He stated that he was forced to represent himself because his appointed counsel abandoned him and he could not afford another lawyer. He also said he wished to proceed *pro se* and have his counsel removed because of disagreements concerning his appeal. In accordance with **Jette**, we forwarded those documents to Silverman on March 1, 2016.

By an order entered February 24, 2016, this Court remanded the case for a **Grazier**[4] hearing so that the PCRA court could conduct an on-the-record colloquy and determine whether Appellant's waiver of counsel was knowing, intelligent, and voluntary. The PCRA court complied with this Court's directive and held a **Grazier** hearing on April 15, 2016. Following the hearing, the PCRA court determined that Appellant's waiver of counsel was valid.

On April 21, 2016, this Court issued a briefing schedule. On May 10, 2016, Appellant filed a *pro se* petition for an extension of time in which to file his brief, which we granted. Appellant filed his *pro se* brief on June 10, 2016.[5] In this *pro se* appeal, Appellant argues that the PCRA court erred in

---

[4] **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998).

[5] Because Appellant expressed a wish to proceed *pro se*, and that request was ratified at the **Grazier** hearing, counsel need not file a **Turner**/**Finley** brief.

dismissing his petition after concluding that he failed to establish that he was prejudiced by his counsel's erroneous advice.[6]

On July 13, 2016, the Commonwealth requested an extension of time in which to file a brief as appellee. We granted that motion and ordered that the Commonwealth file its brief on or before September 9, 2016. The Commonwealth did not file a brief by that deadline, and it has not filed any brief at all. On December 5, 2016, Appellant filed a "Motion to Dismiss with Prejudice" that asks that, as a remedy for the Commonwealth's failure to file a brief, we disregard any argument by the Commonwealth and award Appellant a new trial. We deny that aspect of the relief sought in Appellant's motion.

Although we disapprove of the Commonwealth's failure to file a brief in this matter, the remedy for that omission is not the automatic granting of the relief sought by Appellant in his appeal. Pennsylvania Rule of Appellate Procedure 2188 provides that if an **appellant** fails to file a timely brief, an appellee may move for dismissal of the matter. However, if the **appellee** fails to file a timely brief, the consequence is that the appellee will be

_____

[6] Appellant did not include a Statement of Questions Involved in his brief, as required by Pennsylvania Rules of Appellate Procedure 2111 and 2116. However, because that failure does not hamper our review, we will address Appellant's substantive argument. *See Savoy v. Savoy*, 641 A.2d 596, 598 (Pa. Super. 1994) (where failure to provide a separate Statement of Questions Involved does not impede this Court's ability to review the issues, we may address the merits of the appeal).

precluded from participating in any oral argument in the case, absent leave of Court. This PCRA case is not subject to oral argument, however. ***See*** Superior Court I.O.P. 36(A), 210 Pa. Code § 65.36(A) ("All post-conviction hearing cases shall be submitted on the briefs and record"). We therefore deny Appellant's "Motion to Dismiss with Prejudice" to the extent he seeks to be awarded a new trial based upon the Commonwealth's failure to file a brief.[7]

Turning to the merits of this appeal, we begin by noting our standard of review: In reviewing the propriety of an order granting or denying PCRA relief, this Court is limited to ascertaining whether the evidence supports the determination of the PCRA court and whether the ruling is free of legal error. ***Commonwealth v. Payne***, 794 A.2d 902, 905 (Pa. Super.), ***appeal***

_____

[7] On October 12, 2016, this Court sent Appellant a notice that his appeal was "listed for submission on briefs without oral argument before [this panel] on October 24, 2016." In his motion, Appellant states that he learned of this letter upon reviewing an "updated docket sheet," but that he never received the letter and requests a copy. We hereby direct the Court's prothonotary to mail a copy of the October 12, 2016 letter to Appellant. Appellant's motion also states that he received a letter from the Court regarding a hearing on October 28, 2016, but that he was not later informed of the hearing's outcome. There was no hearing by this Court in this matter on October 28, 2016, or on any other date, and the Court issued no letter informing Appellant of such a hearing date. To the extent that Appellant misconstrues the reference to "October 24, 2016," in this Court's October 12, 2016 correspondence as notice of an October hearing date, Appellant is mistaken. Our letter notified Appellant only that the case was being assigned to this panel on October 24, 2016 for the panel to then consider and dispose of Appellant's appeal on the briefs and record. The panel has now done so and is deciding the appeal by this memorandum.

*denied*, 808 A.2d 571 (Pa. 2002). This Court defers to the findings of the PCRA court, which will not be disturbed unless they have no support in the certified record. *Id.* "Further, the PCRA court's credibility determinations are binding on this Court, where there is record support for those determinations." *Commonwealth v. Anderson*, 995 A.2d 1184, 1189 (Pa. Super.), *appeal denied*, 9 A.3d 626 (Pa. 2010).

To obtain relief under the PCRA premised on a claim that counsel was ineffective, a petitioner must demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) petitioner was prejudiced by counsel's act or omission. *See Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987). In this context, a finding of "prejudice" requires the petitioner to show "there is a reasonable probability that, but for the error of counsel, the outcome of the proceeding would have been different." *Commonwealth v. Stevens*, 739 A.2d 507, 512 (Pa. 1999). If a petitioner fails to prove by a preponderance of the evidence any of the three *Pierce* requirements, the court need not address the remaining requirements. *Commonwealth v. Fitzgerald*, 979 A.2d 908, 911 (Pa. Super. 2009), *appeal denied*, 990 A.2d 727 (Pa. 2010).

The right to effective assistance of counsel extends to the plea process:

> However, allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only

> if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea. Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases.

*Commonwealth v. Wah*, 42 A.3d 335, 338-39 (Pa. Super. 2012) (citations, brackets, and quotation marks omitted). Moreover, to prove prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Commonwealth v. Hickman*, 799 A.2d 136, 141 (Pa. Super. 2002) (applying same test under Pennsylvania law). "The 'reasonable probability' test is not a stringent one." *Hickman*, 799 A.2d at 141 (citing *Nix v. Whiteside*, 475 U.S. 157, 175 (1986)). "[A] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Nix*, 475 U.S. at 175 (citation omitted).

In *Hill*, the defendant alleged that plea counsel erroneously advised him that if he pleaded guilty, he would be eligible for parole after serving one-third of his sentence, when in fact the defendant would not be eligible for parole until he had served one-half of his sentence. *Hill*, 474 U.S. at 55. The Court found it "unnecessary to determine whether there may be circumstances under which erroneous advice by counsel as to parole eligibility may be deemed constitutionally ineffective assistance of counsel,"

because it concluded that Hill had not satisfied the prejudice requirement.

*Id.* at 60. The Court explained:

> Petitioner did not allege in his habeas petition that, had counsel correctly informed him about his parole eligibility date, he would have pleaded not guilty and insisted on going to trial. He alleged no special circumstances that might support the conclusion that he placed particular emphasis on his parole eligibility in deciding whether or not to plead guilty. Indeed, petitioner's mistaken belief that he would become eligible for parole after serving one-third of his sentence would seem to have affected not only his calculation of the time he likely would serve if sentenced pursuant to the proposed plea agreement, but also his calculation of the time he likely would serve if he went to trial and were convicted.

*Id.*

In *Hickman*, this Court held that a PCRA petitioner was entitled to relief where his "plea counsel gave [him] reason to believe he would be released from prison in two years and be eligible for parole six months later, when, in fact, [he] was statutorily ineligible for release into the boot camp program and could not receive parole until he had served four years['] imprisonment." *Hickman*, 799 A.2d at 141. At the PCRA hearing, both Hickman and his plea counsel testified that but for counsel's erroneous advice regarding boot camp, Hickman would have pleaded "not guilty" and opted to go to trial. *Id.* The PCRA court found that testimony credible. *Id.* This Court noted that the circumstances of Hickman's case were consistent with his claim, explaining, "it is not unlikely that he would have otherwise tested the case against him at trial since the risk of a guilty verdict carried but an additional year on his maximum sentence." *Id.* at 141-42. Under

those circumstances, we held that Hickman had proved his plea counsel was ineffective and must receive the opportunity to withdraw his guilty plea. *Id.* at 141-43.

In this case, Appellant claims that his plea counsel provided ineffective assistance by erroneously advising him that he would be eligible for pre-release when, in fact, that program had been abolished. He argues that, in accordance with *Hickman*, his claim has arguable merit and his counsel had no reasonable basis for his error. Appellant further asserts that because he relied on his counsel's representations regarding pre-release, his plea was not knowing and voluntary. He states, "[t]here is no evidence in this record to suggest that petitioner was anything but eager to have his day in court." Appellant's Brief at 11. He notes that he rejected two prior plea offers, one for 25 to 50 years' incarceration and one for 20 to 40 years' incarceration. *Id.* at 11-12. Contending that the evidence against him "was at least equally consistent with verdicts of third degree murder and voluntary manslaughter," he concludes that, "[o]bjectively, a decision to proceed to trial was a perfectly rational choice." *Id.* at 12.

Contrary to Appellant's argument, however, the PCRA court found that Appellant failed to prove that he would have gone to trial if he had received correct advice about the pre-release program. We are required to defer to the PCRA court's findings on this issue if they are supported by the evidence

of record, *Payne*, 794 A.2d at 905, and, after a careful review of the record, we conclude that the PCRA court's findings do indeed have record support.

The PCRA court believed Young's testimony that Young told Appellant that there was only a "one in a million chance" of obtaining pre-release and that most defendants serve about 80% of their maximum sentences. PCRA Ct. Op. at 7. Although Appellant presented witnesses who disputed that testimony, we are required to accept the PCRA court's credibility determinations on this issue. *Anderson*, 995 A.2d at 1189.[8] Having accepted Young's testimony, the PCRA court then concluded that Appellant failed to prove a reasonable probability that, but for his "one in a million chance" of pre-release, he would not have pleaded guilty. PCRA Ct. Op. at 7-8; *see Hill*, 474 U.S. at 59. The court noted that Appellant's defense strategy was "severely compromised by the additional admissible evidence of a contact gunshot wound, eyewitness testimony[,] and a ballistic match to ammunition found in [Appellant]'s residence upon his arrest." PCRA Ct. Op. at 8. The court also noted that if Appellant proceeded to trial, "there was a significant risk of being found guilty of first-degree murder and being

_____

[8] We note that in this case, unlike in *Hickman*, Appellant did not testify at the evidentiary hearing. Although Appellant attached an affidavit to his PCRA petition in which he properly alleged prejudice, an affidavit is not a substitute for testimony at the evidentiary hearing. *See Commonwealth v. Dennis*, 950 A.2d 945, 964 (Pa. 2008) (where petitioner attached affidavits from potential alibi witnesses to his PCRA petition, but did not present their testimony at his evidentiary hearing, he failed to carry his burden of proof).

sentenced to . . . mandatory life in prison without parole." *Id.* The court's conclusion was supported by the evidence and not based on an error of law.

Based on the foregoing, we grant counsel's petition to withdraw and affirm the PCRA court's order denying Appellant post-conviction relief. We also deny Appellant's Motion to Dismiss with Prejudice, and we direct the Superior Court Prothonotary to mail Appellant a copy of the October 12, 2016 submission letter.

Petition to withdraw granted. Motion to Dismiss with Prejudice denied. Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/20/2017