J-S45037-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: A.A.P., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: N.G.P., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 503 MDA 2017 |

Appeal from the Decree January 31, 2017
in the Court of Common Pleas of Bradford County
Orphans' Court at No:  24 Adopt 2016

| | | |
|---|---|---|
| IN RE: ADOPTION OF: M.M.P., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: N.G.P., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 504 MDA 2017 |

Appeal from the Decree January 31, 2017
in the Court of Common Pleas of Bradford County
Orphans' Court at No.:  25 Adopt 2016

| | | |
|---|---|---|
| IN RE: ADOPTION OF: P.E.P., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: N.G.P., FATHER | : | |
| | : | |
| | : | |
| | : | No. 505 MDA 2017 |

Appeal from the Decree January 31, 2017
in the Court of Common Pleas of Bradford County
Orphans' Court at No.:  26 Adopt 2016

BEFORE:   PANELLA, J., OTT, J., and PLATT[*], J.

MEMORANDUM BY PLATT, J.:                **FILED SEPTEMBER 12, 2018**

N.G.P. ("Father") appeals from the decrees entered January 31, 2017, which granted the petition of M.O. ("Mother") and J.S.O. ("Stepfather"), and terminated his parental rights to M.M.P., born October 2003, and A.A.P. and P.E.P., born February 2007 (collectively, "the Children"), pursuant to section 2511(a)(1) and (b) of the Adoption Act, 23 Pa.C.S.A. § 2511.  We affirm.

We adopt the following statement of facts and procedural history from the trial court's decree of January 31, 2017, and from the notes of testimony. (***See*** Decree, 1/31/17, at 1-6; Notes of Testimony (N.T.), 1/12/17, at 1-287).

M.M.P. was born in October 2003 to Mother and Father; the parents married in November 2004.  Twins A.A.P. and P.E.P. were born in February 2007.  Father was incarcerated several times in 2009 and 2010.  Mother and Father separated in August 2010, and were divorced thereafter.  After their separation, no formal custody agreement was entered and no complaint in custody filed.  Mother impliedly assumed primary legal and physical custody of the Children.  Since the separation, Father has paid no child support, although J.P. ("Paternal Grandmother") signed a child support agreement and paid approximately $10,000.00 per year to Mother in support thereof.

---

[*] Retired Senior Judge assigned to the Superior Court.

Mother moved to New York State with the Children to pursue further schooling. Until December 2012, Father had little to no contact with the Children, and spent extended time in Ohio. Despite Father's lack of involvement, the Children had a good relationship with Paternal Grandmother and engaged in occasional visitation with her. In the time since the divorce, Mother became romantically involved with Stepfather, upsetting Father, who began making verbal threats by telephone. The threats were so numerous and disturbing that Mother blocked the number Father called from, which was Paternal Grandmother's landline.

In December 2012, Father was concerned about the Mayan calendar and the end of the world predicted for that year. As a result of his concerns, Father stole a truck and was arrested trying to reach Mother's house to take the Children. Father was incarcerated for approximately eight months in 2013 following this incident. During his incarceration, Mother removed the block on his number.

Mother and Stepfather married in July 2013, and have been living together with their blended family in Pennsylvania since October 2013. The Children have two step-siblings from Stepfather's previous marriage, and view Stepfather as their father and the step-siblings as their brothers.[1] Stepfather supports the Children, attends their extracurricular activities, assists with hospital and medical visits, and treats them as his own.

_____

[1] Additionally, Stepfather and Mother have a sixth child together, W.O., born January 2016.

In 2014 and 2015, Paternal Grandmother continued visitation with the Children. She admitted to placing calls to Father while engaging in that visitation, allowing him to speak with the Children. If Mother was present, she would wait until she was alone with the Children to call Father. In 2015, Paternal Grandmother took the Children to a renaissance fair and Father, without the knowledge of Mother, participated in the day trip. In July 2016, G.P. ("Paternal Grandfather") took the Children to a family reunion; testimony conflicted as to whether they stayed overnight at the family farm and whether Father was present.

In September 2016, Father *pro se* filed a petition to modify custody. In October 2016, Paternal Grandmother took the Children to Knoebel's Grove for a day trip, and Father joined them on that trip.

In November 2016, Mother and Stepfather filed a petition seeking to involuntarily terminate the parental rights of Father, so that Stepfather could adopt the children. In December 2016, the court convened a hearing on Father's petition to modify custody but ordered that matters remain in status quo at that time.

Fred N. Smith, Esquire, was appointed as guardian *ad litem* ("GAL"),[2] interviewed the Children, and prepared a thorough report noting that none of

_____

[2] We note that the trial court properly did not appoint a separate attorney to represent the Children's legal interests (*i.e.*, preferred outcome) where the record reflects that there was no conflict between their legal and best interests. **See In Re: T.S.**, **E.S.**, 2018 WL 4001825, at *10 (Pa. filed Aug.

- 4 -

the Children has a bond or even casual relationship with Father, and that they consider Stepfather to fulfill the paternal role in their lives. Attorney Smith additionally recommended no contact between Father and the Children until after the termination petition was decided and that, if the termination petition was denied, Father should have no visitation until submitting to a mental health evaluation.

An evidentiary hearing was convened on the termination petition on January 12, 2017. Father, represented by counsel, testified on his own behalf. He presented the testimony of Paternal Grandmother, Paternal Grandfather, and his sister, N.N.P. Mother and Stepfather, represented by counsel, testified on their own behalves. Mother also presented the testimony of J.L., the Children's babysitter. The Children were represented by Attorney Smith.

Prior to the hearing, the court conducted an *in camera* interview with M.M.P., thirteen years old at the time. M.M.P. unequivocally indicated that he preferred to be adopted, and adoption was the preference of his nine-year-old siblings. M.M.P. also testified that his younger siblings barely know Father, and about his own "bad memories" of Father. (N.T. *in camera* interview of M.M.P., 1/12/17, at 17). This included an incident where Father took M.M.P.'s glasses and slapped M.M.P. in the face when he asked for the glasses back,

_____

22, 2018) ("[D]uring contested termination-of-parental-rights proceedings, where there is no conflict between a child's legal and best interests, an attorney-guardian *ad litem* representing the child's best interests can also represent the child's legal interests.").

and other incidents, such as where Mother had given M.M.P. video games as a gift, and Father took the games from M.M.P.

Father, represented by counsel, testified on his own behalf. He stated that he had many pictures of the Children enjoying time together as a family, but he did not provide this evidence to the court. Many of the pictures he did bring with him were either several years old, or were pictures Mother had taken and sent to Paternal Grandmother. Father also claimed that he routinely came with Paternal Grandmother to pick up the Children, spoke with the Children on the phone, and provided the Children with cell phones so that they could call him. Father also claimed he had no way to contact the Children because Mother had blocked his phone number. Much of Father's testimony was contradicted by testimony from Mother, the Children, Stepfather, and J.L., who has been watching the Children and their step-siblings since 2013.

At the conclusion of the hearing, the court held the matter under advisement and on January 31, 2017 issued findings of fact, conclusions of law, and decrees terminating Father's parental rights to the Children.

On March 3, 2017, Father, proceeding *pro se*, contemporaneously filed notices of appeal and concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i). The trial court entered an order on March

17, 2017, advising that the reasons for its decision are contained in the order appealed from.  *See* Pa.R.A.P. 1925(a)(2)(ii).[3]

---

[3] Father *pro se* filed his notices of appeal in this Court and, from the beginning, has purported to represent himself.  On November 14, 2017, we remanded to the trial court so that Father could be appointed counsel.  (*See In Re: Adoption of A.A.P., M.M.P., and P.E.P.*, Nos. 503-05 MDA 2017, unpublished Judgment Order at *4 (Pa. Super. filed Nov. 14, 2017)).  In that judgment order, this Court explained that Father's March 3, 2017 notices of appeal were timely, because although the decrees were entered on the docket on January 31, 2017, notice pursuant to Pennsylvania Rule of Civil Procedure 236 was not sent until February 3, 2017.  (*See id.* at *2 n.2); *see also* Pa.R.C.P. 236(b); *In re L.M.*, 923 A.2d 505, 508-09 (Pa. Super. 2007) (thirty-day appeal period does not begin to run until such notice is given).

In accordance with this Court's directive, the trial court appointed counsel to represent Father, and Father subsequently *pro se* filed a waiver of counsel in this Court.  We once again remanded on May 8, 2018, for the trial court to determine whether Father wished to proceed with appointed counsel or *pro se*.

On June 1, 2018, the trial court held a hearing to determine whether Father had knowingly, intelligently, and voluntarily waived his right to counsel, and allowed him to proceed *pro se*.  (*See* N.T. Hearing, 6/01/18, at 1-15; Order, 6/01/18).  Because hybrid representation is prohibited, we will not consider the brief counsel filed on Father's behalf, where Father objected to counsel's representation and counsel subsequently withdrew.  *See*, *e.g.*, *Commonwealth v. Jette*, 23 A.3d 1032, 1040 (Pa. 2011).

On appeal, Father purports to raise three issues, which we collectively interpret as a claim that the trial court abused its discretion in terminating his parental rights. (**See** Father's Brief, at 4).[4], [5]

We review cases involving the termination of parental rights according to the following standards.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. [A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously

---

[4] Father's *pro se* brief is rambling and fails to develop a cogent legal argument supported by pertinent authority. **See** Pa.R.A.P. 2119(a)-(c). Additionally, the issues addressed in the argument section of his brief do not follow his statement of questions presented, (**see** Father's Brief, at 4, 11, 13, 16). We nonetheless address his claims as we interpret them, keeping in mind that we construe liberally filings by *pro se* litigants. **See**, **e.g.**, **Commonwealth v. Lyons**, 833 A.2d 245, 251-52 (Pa. Super. 2003), *appeal denied*, 879 A.2d 782 (Pa. 2005).

[5] We also note that Mother contends that because she was not served concurrently with the filing of the notices of appeal and statements of errors, the appeal should be dismissed. (**See** Mother's Brief, at 20-23); **see also** Pa.R.A.P. 905(a)(2), Pa.R.A.P. 1925(a)(2)(i) (appellants are required to file and serve concise statements concurrently with notice of appeal); **In re K.T.E.L.**, 983 A.2d 745, 747 (Pa. Super. 2009) (noting that this Court may resolve defective notices of appeal on a case-by-case basis). Here, the trial court received the notices of appeal and concise statements, and ultimately, so did Mother. We decline to quash the appeal because Mother was not prejudiced. **See K.T.E.L.**, **supra** at 748.

emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotations marks omitted).

Here, the court terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (b). Termination requires a bifurcated analysis:

> . . . Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

The relevant sections of 23 Pa.C.S.A. § 2511 provide that:

> **(a) General rule.—**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> \* \* \*
>
> **(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings,

income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

First, we address the court's findings under subsection 2511(a)(1). We note that "[a] court may terminate parental rights under Section 2511(a)(1) where the parent demonstrates a settled purpose to relinquish parental claim to a child or fails to perform parental duties for at least the six months prior to the filing of the termination petition." *In re Z.P.*, 994 A.2d 1108, 1117 (Pa. Super. 2010) (case citation and emphasis omitted). With respect to Section 2511(a)(1),

> [o]nce the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

Further,

> the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

- 10 -

*In Interest of: T.J.J.M.*, 2018 WL 2947885, at *7 (Pa. Super. filed June 13, 2018) (emphasis and citations omitted).

Here, the evidence established Father's failure to perform his parental duties in both the six months prior to termination and beyond. The trial court appropriately noted the following: 1) Father had virtually no contact with the Children from August 2010 until December 2012; 2) all of Father's contact with the Children, minimal at best, was coordinated through Paternal Grandmother; 3) Paternal Grandmother paid all child support herself; 4) Father has never been involved in the Children's extracurricular activities with the exception of one chorus event in 2016; 5) Father has not regularly involved himself in the Children's lives and has not sent letters, cards, or communications, has not called the Children, and has not arranged for visits; 6) Father has not supported the Children financially, emotionally, developmentally, mentally, or psychologically in any way; 7) many of Father's photographs, which he alleged showed contact with the Children, were photographs taken by Mother and shared with Paternal Grandmother; 8) Father's self-serving evidence and testimony was contradicted by other credible testimony.

Accordingly, the trial court appropriately determined that Father's parental rights should be terminated pursuant to Section 2511(a)(1), as he had for a period of six months failed to perform his parental duties, and that this decision was supported by the competent, clear, and convincing evidence of record. **See In re K.Z.S.**, 946 A.2d 753, 756-57 (Pa. Super. 2008).

Next, we must consider whether the child's needs and welfare will be met by termination pursuant to Subsection (b). *See Z.P.*, *supra* at 1121. "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." *Id.* (citation omitted). The court is not required to use expert testimony, and social workers and caseworkers may offer evaluations as well. *See id.* Ultimately, the concern is the needs and welfare of a child. *See id.* Where there is no evidence of a bond between the parent and child, it is reasonable to infer that no bond exists. *See K.Z.S.*, *supra* at 762-63.

We have noted that

> [b]efore granting a petition to terminate parental rights, it is imperative that a trial court carefully consider the intangible dimension of the needs and welfare of a child—the love, comfort, security, and closeness—entailed in a parent-child relationship, as well as the tangible dimension. Continuity of relationships is also important to a child, for whom severance of close parental ties is usually extremely painful. The trial court, in considering what situation would best serve the child[ren]'s needs and welfare, must examine the status of the natural parental bond to consider whether terminating the natural parents' rights would destroy something in existence that is necessary and beneficial.

*Z.P.*, *supra* at 1121 (citation omitted). We may not consider any effort by the parent to remedy the conditions in subsection (a)(1) if that remedy was initiated after the parent was given notice of the filing of the termination petition, and this evidentiary limitation applies to the entire termination analysis. *See id.*

Here, the trial court accepted as credible the testimony of Mother, Stepfather, J.L., and M.M.P. that Father was not involved in the Children's lives. The trial court further accepted as credible M.M.P.'s own testimony that he had only a few contacts with Father over the last two years, could not recall phone calls from Father, and had made only two visits with Father, both in the company of Parental Grandmother. M.M.P. was "unequivocal" in considering Stepfather to be his "real dad" and he was eager and hopeful that he could be adopted. (Decree, 1/31/17, at 3 ¶ 18). M.M.P. stated that Father had no bond with the twins, who also wished to be adopted. Further, the trial court accepted as credible the report of Attorney Smith, who interviewed all three Children, and concluded that none of the Children had a bond or even a casual relationship with Father, that he had not been involved except in two visits, and that the Children do not consider Father to fill any kind of parental role in their lives. Attorney Smith concluded that Father had been estranged for six years from M.M.P. and is a virtual stranger to A.A.P. and P.E.P. All three Children were hopeful to be adopted by Stepfather so that they could remain in their stable, loving, blended family.

Thus, we conclude that the clear and convincing evidence of record supports the termination of Father's parental rights under Section 2511(a)(1), as well as the Section 2511(b) findings that there was no bond between Father and the Children, and that adoption would best serve their needs and welfare. *See Z.P.*, *supra* at 1121. Accordingly, we affirm.

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/12/2018