J-A28011-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANTHONY SHAW | : | |
| | : | |
| Appellant | : | No. 371 EDA 2022 |

Appeal from the PCRA Order Entered January 12, 2022
In the Court of Common Pleas of Delaware County
Criminal Division at No(s):  CP-23-CR-0006238-2010

BEFORE:  PANELLA, P.J., LAZARUS, J., and SULLIVAN, J.

MEMORANDUM BY PANELLA, P.J.:                    **FILED MAY 9, 2023**

Anthony Shaw brings this appeal from the order dismissing his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546, which was reviewed by the PCRA court following a remand from our Supreme Court. Upon careful review, we affirm.

The history of this case is long and tortuous. On November 30, 2009, Shaw and an accomplice participated in a home invasion of an apartment in Darby Borough. During the incident, the two men demanded money and assaulted Alex Adebisi. Shaw shot Adebisi in the thigh and chest before fleeing. Adebisi identified both Shaw and the accomplice in separate photo arrays that Adebisi viewed on different days.

Prior to trial, defense counsel filed an alibi notice on behalf of Shaw, which identified two alibi witnesses, April Wynn and Devon Crowley.[1] However, at trial only Wynn testified, and she indicated that Crowley was not with Wynn and Shaw at the specific time of the incident. Wynn explained that she was with Shaw at a shopping mall in a different county at the time of the shooting. In his closing argument, trial counsel discussed the alibi notice and explained to the jury that Crowley was mentioned in the notice because Crowley would have discussed Shaw's whereabouts for the portion of the day before Shaw was with Wynn.

On September 14, 2011, a jury convicted Shaw of attempted murder, robbery, aggravated assault, burglary, firearms not to be possessed without a license, possession of an instrument of crime ("PIC"), and criminal conspiracy to commit the following crimes: aggravated assault, robbery, and

---

[1] The alibi notice provides as follows:

> [Shaw] contends that at the times of the commission of the alleged crimes, he was with April Wynn, who resides at … and Devon [Crowley], who resides … .
>
> * * *
>
> The substance of the testimony of April Wynn and Devon [Crowley] will be that at the time of the commission of the alleged crimes, [Shaw] was with them and they were in Philadelphia and not in Darby at 127 North Front Street at the time of the alleged assault upon [Adebisi].

Notice of Alibi Defense, 4/29/11.

burglary. On December 15, 2011, the trial court sentenced Shaw to serve an aggregate term of incarceration of fifteen to thirty years, followed by five years of probation. Shaw filed timely post-sentence motions, which the trial court eventually denied. On direct appeal this Court affirmed Shaw's judgment of sentence and our Supreme Court denied allowance of appeal. *See Commonwealth v. Shaw*, 2795 EDA 2013, 105 A.3d 794 (Pa. Super. filed July 17, 2014) (unpublished memorandum), *appeal denied*, 106 A.3d 726 (Pa. 2015).

On November 5, 2015, Shaw filed, *pro se*, the instant PCRA petition. The PCRA court appointed attorney Stephen Molineux to represent Shaw, and counsel filed an amended PCRA petition. Shaw included a claim that trial counsel was ineffective for failing to amend the alibi notice before trial to remove the reference to Crowley. The PCRA court held an evidentiary hearing and denied relief. Shaw took an appeal to this Court, and attorney Molineux did not present the issue of trial counsel's effective assistance concerning the alibi notice in Shaw's Pa.R.A.P. 1925(b) statement. Attorney Molineux withdrew, and Shaw retained new appellate counsel. New appellate counsel asserted attorney Molineux's ineffectiveness in failing to preserve the only issue litigated at the PCRA hearing. A panel of this Court agreed with Shaw's claims, reversing the PCRA court order, vacating the judgment of sentence, and remanding the case for a new trial. *See Commonwealth v. Shaw*, 214 A.3d 283 (Pa. Super. 2019), *vacated on appeal*, 247 A.3d 1008 (Pa. 2021).

The Commonwealth took an appeal, and our Supreme Court vacated this Court's order and remanded the matter to the PCRA court to afford Shaw the opportunity to create an evidentiary record to meet his burden of demonstrating ineffectiveness. *See Commonwealth v. Shaw*, 247 A.3d 1008, 1017 (Pa. 2021). On remand, the PCRA court held an evidentiary hearing on September 24, 2021. The PCRA court denied relief and this appeal followed.[2]

Shaw now presents challenges to the PCRA court's determinations concerning the effective assistance of both trial and PCRA counsel. Shaw's claims addressing trial counsel's assistance stem from the handling of an alibi notice prepared and filed by trial counsel. The challenges to the assistance of PCRA counsel stem from counsel's presentation and preservation of the ineffective assistance claim against trial counsel.[3]

_____

[2] We note Shaw's notice of appeal was filed before the entry of a final order on the trial court's docket. Pursuant to Pa.R.A.P. 905(a)(5), "[a] notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof." Because Shaw's notice of appeal was filed after the PCRA court opinion announcing its determination and before the entry of an appealable order on the docket, we will treat the notice of appeal as having been timely filed.

[3] We observe Shaw has presented an argument claiming that the PCRA court erred when it found that the ineffectiveness of trial counsel claim had been previously litigated on direct appeal. *See* Appellant's Brief at 29-31. However, Shaw has not properly developed this issue for appellate review. It is undisputed that the argument portion of an appellate brief must be developed with pertinent discussion of the issue, which includes citations to relevant
*(Footnote Continued Next Page)*

Our standard of review for an order denying PCRA relief is whether the record supports the PCRA court's determination, and whether the PCRA court's determination is free of legal error. **See Commonwealth v. Phillips**, 31 A.3d 317, 319 (Pa. Super. 2011). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. **See id**.

Shaw's issues present claims of ineffective assistance of counsel. Concerning ineffective assistance of counsel arguments, we presume counsel is effective, and Shaw bears the burden to prove otherwise. **See Commonwealth v. Bennett**, 57 A.3d 1185, 1195 (Pa. 2012). To establish a right to relief, Shaw must demonstrate: (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different. **See Commonwealth v. Solano**, 129 A.3d 1156, 1162-1163 (Pa. 2015).

We observe that claims of ineffective assistance of counsel are not self-proving. **See Commonwealth v. Wharton**, 811 A.2d 978, 986 (Pa. 2002). "[A] post-conviction petitioner must, at a minimum, present argumentation

_____

authority. **See** Pa.R.A.P. 2119(a). The argument section of Shaw's brief addressing this issue consists of general statements without any citation to relevant authority supporting his allegation of PCRA court error. Accordingly, because Shaw has not developed any significant argument relating to the in the argument section of his appellate brief, we deem this issue to be waived.

relative to each layer of ineffective assistance, on all three prongs of the ineffectiveness standard…." *Commonwealth v. D'Amato*, 856 A.2d 806, 812 (Pa. 2004) (citation omitted). "A failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness." *Commonwealth v. Daniels*, 963 A.2d 409, 419 (Pa. 2009) (citation omitted).

Under the first prong of the ineffectiveness test, an appellant is not entitled to relief if his underlying legal has no merit. *See Commonwealth v. Ousley*, 21 A.3d 1238, 1246 (Pa. Super. 2011). In short, counsel cannot be deemed ineffective for failing to pursue a meritless claim. *See Commonwealth v. Loner*, 836 A.2d 125, 132 (Pa. Super. 2003) (*en banc*).

Regarding the second prong, we have reiterated that counsel's approach must be "so unreasonable that no competent lawyer would have chosen it." *Commonwealth v. Ervin*, 766 A.2d 859, 862-863 (Pa. Super. 2000) (citation omitted). Our Supreme Court explained our review of reasonableness as follows: "Our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had some reasonable basis designed to effectuate his client's interests. The test is not whether other alternatives were more reasonable, employing a hindsight evaluation of the record." *Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987) (citation omitted).

Concerning the third prong, we are mindful that prejudice requires proof that there is a reasonable probability that but-for counsel's error, the outcome of the proceeding would have been different. ***See Commonwealth v. Pierce,*** 786 A.2d 203, 213 (Pa. 2001). When an appellant has failed to meet the prejudice prong of an ineffective assistance of counsel claim, the claim may be disposed of on that basis alone, without a determination of whether the first two prongs have been met. ***See Commonwealth v. Baker***, 880 A.2d 654, 656 (Pa. Super. 2005).

Here, Shaw first argues that his trial counsel was ineffective for failing to properly investigate Shaw's alibi, to file an accurate alibi notice, or to subsequently correct the alibi notice. ***See*** Appellant's Brief at 20-29. Shaw posits that trial counsel's failure to properly interview potential witnesses resulted in counsel filing the inaccurate alibi notice. Shaw contends that he suffered prejudice because the inaccurate alibi notice made it appear as though Shaw was lying about the existence of an alibi and his own innocence. ***See id***. at 52-58. Essentially, he claims that, but for trial counsel's actions, the outcome of his trial would have been different.

Upon review of the record, we conclude Shaw failed to establish that he suffered prejudice from trial counsel's handling of the alibi notice. At trial, Wynn testified that she and Shaw were alone at the time of the shooting. ***See*** N.T., 9/14/11, at 149-55. On cross-examination, the prosecutor, after noting that an alibi notice was not prepared by Wynn but by trial counsel, asked

Wynn if she would be surprised to learn the alibi notice indicated Shaw was with Wynn and also Crowley *See id*. at 174-77. The prosecutor's questioning of Wynn confirmed that Crowley, Shaw and Wynn were not together at the same time. *See id*. at 175-76. Thereafter, trial counsel questioned Wynn on redirect examination and reiterated the fact that trial counsel and not Wynn prepared the alibi notice. *See id*. at 182. Wynn further testified that Shaw "could have been" with Crowley earlier in the day. *See id*. at 185.

Further, during his closing argument, trial counsel reiterated his purpose for including Crowley in the alibi notice, reminding the jury that his purpose for including Crowley in the alibi notice was because Shaw had been with Crowley earlier in the day. N.T., 9/14/11, at 217-20. Regarding the implication that the alibi notice somehow negatively affected Wynn's credibility, trial counsel offered the following to the jury:

> now mind you, [Wynn] never filed that alibi -- the witness, okay, she never saw it. [Wynn] never read it and, in fact, she didn't even know what time the crimes occurred. All [Wynn] knows is what she did and that's what she and Mr. Shaw did and that's what she testified concerning, ladies and gentlemen.

*Id*. at 220.

So, the record demonstrates that the Commonwealth did attempt to impeach Wynn with the alibi notice. However, trial counsel was permitted to present evidence and argue that the Commonwealth's characterization of the alibi notice was misleading. Accordingly, the jury was given sufficient evidence to evaluate whether the alibi notice discredited Wynn's testimony.

Further, when viewed in the context of the totality of the Commonwealth's evidence, we conclude any prejudice Shaw suffered from the alibi notice was *de minimus*. Adebisi, the victim, identified Shaw and his codefendant from photo arrays. **See** N.T., 9/14/11, at 22-23, 30-31. In addition, Adebisi positively identified both men at trial. **See** N.T., 9/13/11, at 95-96.

Adebisi testified that he had first seen both men at a friend's house earlier in the night. **See id**. at 74. He subsequently left his friend's house and walked to his apartment. **See id**. at 75. The two men followed them, but stayed at the gate to his property while Adebisi and his acquaintances entered his apartment. **See id**. at 75-76. Adebisi noticed the men loitering outside his apartment and went outside to check on them. **See id**. at 80. He had a short conversation with the men, learning that the taller of the men had lived in Flatbush, NY, and was originally from Haiti. **See id**. at 82. He observed that the men were rolling a marijuana cigarette and he warned them that his landlord didn't permit strangers to loiter on the property. **See id**. at 80-81.

The men agreed to leave, and Adebisi returned to his apartment. **See id**. Shortly thereafter, Adebisi heard a knock at the door, where he encountered the two men again. **See id**. at 83. The men asked him if he could break a $100 bill. **See id**.

Adebisi went back to his apartment to retrieve five $20 bills. **See id**. at 84. He then exchanged his $20 bills for the $100 bill. **See id**. Adebisi and the

men joked about the $100 bill being counterfeit. *See id*. at 85. Adebisi then returned to his apartment. *See id*.

Several minutes later, there was another knock at the door. *See id*. at 87. The men from outside were at the door, and the taller man immediately punched Adebisi in the face. *See id*. at 89. The outside light was on. *See id*. The taller man asked Adebisi for the money. *See id*. at 93. The shorter man subsequently shot Adebisi. *See id*. at 97. Adebisi identified the taller man as Shaw's codefendant, and the shorter man as Shaw. *See id*. at 95-96.

This testimony established that Adebisi had a significant opportunity to see the men, converse with them, and learn about their histories. His identification was not based on a fleeting observation, nor was it totally subject to the intense emotional duress of active criminal conduct.

The Commonwealth also presented detailed testimony from three witnesses that corroborated Adebisi's detailed version of events on the night of the incident. *See id*. at 78-114. Adebisi's neighbor, Adetokunbo Adeore, testified that he observed two strange men standing in front of Adebisi's residence. *See id*. at 290. Likewise, Adebisi's friend, Bobatuna Oke, testified that he also saw two "strange faces" in the area, and he told them to leave. *See id*. at 303-04. The record further reveals that Oke and Tanisha Garraway, an acquaintance of Adebisi's, offered similar accounts of the moments surrounding the home invasion and leading up to the shooting. *See id*. at 307-310, 340. This evidence further supported Adebisi's credibility.

Although we concede that Shaw may have suffered some minor prejudice from the alibi notice, we nevertheless conclude that Shaw did not meet his burden to establish there is a reasonable likelihood the outcome of the trial would have been different if counsel had removed any mention of Crowley from the notice before trial. Hence, Shaw has failed to establish that trial counsel was ineffective in this regard.

Shaw next argues that the PCRA court improperly concluded that PCRA counsel was not ineffective. **See** Appellant's Brief at 31-51. Shaw asserts that PCRA counsel was ineffective for failing to preserve the issue of trial counsel's effective assistance for appeal. Specifically, "[Shaw] avers that PCRA counsel's decision not to preserve the sole claim that had been the subject of the evidentiary [PCRA] hearing … had no objectively reasonable tactical basis." **Id**. at 33.

"It is well settled that appellate counsel is entitled, as a matter of strategy, to forego even meritorious issues in favor of issues he believes pose a greater likelihood of success." **Commonwealth v. Jette**, 23 A.3d 1032, 1043 (Pa. 2011) (citation omitted). "This process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." **Id**. (citation omitted).

It is undisputed that, at the initial PCRA hearing, PCRA counsel presented an argument that trial counsel was ineffective for failing to amend

the alibi notice. *See* N.T., 4/5/18, at 5-7. At the PCRA hearing held pursuant to our Supreme Court's remand, Attorney Molineux offered the following to explain his decision, after further review, to forego on appeal the claim of trial counsel's ineffectiveness:

> Upon my subsequent review of the record, as I always do in every case that I'm presented on this, I determined that the combination of what transpired at the court -- at the trial court, Mr. Johnson's explanation at the PCRA hearing and his -- the further review of this trial transcript where he did a -- what I determined to be a very effective explanation to the jury as to why that's just a notice and even if he didn't preside, the person he didn't protect wasn't technically an alibi anyway because it took place before it happened. I chose not to bring that -- that appeal issue.

N.T., 9/24/21, at 22. Upon further prompting from counsel, Attorney Molineux confirmed, "I did not choose to bring it as an appeal issue in the case after my further review of the case. I didn't feel that I was going to prevail on that."

*Id*. at 23.

On cross examination of Attorney Molineux by the Commonwealth, the following transpired:

> Q     And in deciding not to pursue a claim, are you doing so because you didn't think it had merit at the time that it was time to file the 1925?
>
> A     As I told defense Counsel, yes.
>
> Q     And between the PCRA evidentiary hearing and the filing of the claim -- or excuse me, the filing of the concise statement, did you have something of a change of view as to the merits of the claim?
>
> A     Yes, obviously, otherwise I would have put it in there.

*Id*. at 39-40.

In summary, Attorney Molineux specifically testified that he believed any challenge to trial counsel's handling of the alibi notice would not have been successful on appeal. Instead, he testified that his approach was to pursue those issues he believed to have the best chance of success. This Court has previously deemed such an approach to be a reasonable one. *See Commonwealth v. Pou*, 201 A.3d 735, 740-41 (Pa. Super. 2018) (appellate counsel makes reasonable strategic decision when he winnows out weaker claims in favor of pursuing claims on appeal believed to offer a better chance for relief).

Moreover, there is no question that, in order to prevail on a claim that trial counsel was ineffective, PCRA counsel would have been required to establish that Shaw suffered prejudice resulting from trial counsel's actions. However, in addressing the previous issue, we discussed trial counsel's handling of the alibi notice and concluded that Shaw failed to establish a reasonable probability of a different verdict. Consequently, because the claim of trial counsel ineffectiveness failed, PCRA counsel was not ineffective for failing to present the issue on appeal. Therefore, Shaw's claims of ineffective assistance lack merit.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/9/2023